BIRELY's EXR's & HOLTZ vs. JOHN AND JOSEPH STALEY, et al.—December, 1833.

Rules of pleading in equity are not to be governed by the same technicality as to matters of form, that controls proceedings at law. Courts of equity look to substance, not form.

One creditor may proceed in equity to vacate conveyances void under the statute of *Elizabeth*, and if successful, the fund arising from the sale of the

property covered by them may be retained in court until the other credi-
tors are notified to come in, and assert their claims to participate.

It is a general principle, that where a creditor seeks the aid of a court of
equity to pursue property fraudulently conveyed away, a judgment must
be first obtained against the debtor, before his lands fraudulently granted
can be reached; in such a pursuit against personal property, a *fi fa* also
must first have been issued: but where the debtor died after suit brought at
law, and before judgment, and the answer set up no such defence, this
principle does not apply.

Where creditor's claims to relief rest upon liens to be acquired through
judgment or execution, it follows as a necessary consequence, that out of
the fund pursued, if land, they must be paid according to the seniority of
their judgments; if personal property, according to their respective pri-
orities acquired by the delivery of their several *fi fa's* to the sheriff.

But a court of equity in *Maryland* would not give any such priority to a
creditor who had judgment merely against an administrator of his debtor.
All creditors without judgment in the life-time of the fraudulent grantor
would come in *pari passu.*

A judgment against an executor or administrator, not only does not bind
real assets, but is not even *prima facie* evidence of a debt, where the real
estate of a deceased debtor has been sold for the payment of debts
due by him.

A creditor of a deceased party cannot obtain judgment against his heirs
where they have no assets by descent.

Where a court of equity is satisfied from the facts in the cause, that a de-
ceased debtor left no personal estate to be administered, they will not re-
quire letters to be taken out, or proceedings against an administrator to be
shown, though under other circumstances, such measures might be deemed
necessary to make proper parties to the suit.

To a bill to vacate conveyances, charged to be fraudulent and comprising *all*
the grantor's real estate, the defendant, his grantee, denied the facts, and
averred, that after the delivery of the deed to him, the grantor was
seized, and possessed of real estate both in F and M counties, abundantly
sufficient, as he believed, to pay complainants. HELD, that the fact of
the grantor's owning other real estate in F and M counties was in issue in
the cause, and being an affirmative allegation in the answer, the burthen
of proof was on the defendant.

The mere production of deeds of conveyance, unaccompanied by any proof
of the existence of the property conveyed, and the title of the grantor
thereto, or his possession thereof, or the possession thereof by the grantee,
is wholly insufficient to prove that the grantee had the property described
in the conveyance, or that it was a fund out of which creditors might
have been satisfied.

To prevent a court from vacating a conveyance made to hinder and delay
creditors, on the ground that the grantee had sufficient property indepen-

dent of that conveyed to pay his debts, it must appear, not only that it was sufficient to pay the complaining creditor, but all the grantor's creditors.

A deed otherwise void under the statute of *Elizabeth*, cannot be sustained on the ground of a secret, or oral contract between the grantor and grantee, that the property conveyed should be held in trust for the benefit of all the creditors of the grantor. A secret contract so made could not be enforced either at law or in equity, at the suit of the grantor or his creditors.

Evidence obtained upon leading interrogatories will not be rejected at the hearing, where the same facts are obtained from the same witness, upon other interrogatories not liable to that objection.

APPEAL from the equity side of *Frederick* county court. This bill was filed on the 15th of February, 1823, by *Elizabeth Birely*, the testatrix in her life-time, and *Nicholas Holtz* against the appellees. It stated that *Jacob Staley*, deceased, on the 16th of October, 1821, was indebted to the complainant by notes, single bills and bonds, to a large amount. That suits on that day were pending in *Frederick* county court, on said notes, &c. against the said *Staley*, (as will be seen by exhibit No. 2,) who at the time thereof, and for many years before, had possessed a large real and personal estate, the whole of which real estate, by a deed of bargain and sale on the said 16th of October, 1821, he conveyed to *John* and *Joseph Staley*, (the appellees,) his two sons, which deed the complainants charge to be fraudulent, and covinous, and made for the purpose of disturbing, hindering, and delaying them, and the other creditors of the grantor. That afterwards, on the 20th of October of the same year, the said *Jacob Staley* executed a bill of sale to his said sons, of all his personal property, they then well knowing, that their father was indebted to these complainants as aforesaid. That he continued so indebted at the period of his death, and that he died intestate, and insolvent in March, 1822. That the said bill of sale also is fraudulent and void, as against the creditors of the grantor. *The prayer* of the bill is, that the deeds may be vacated, the property sold for the benefit of the creditors of the grantor, and for general relief.

*Exhibit* No. 2, being transcripts of docket entries, showed among other things, that a judgment was rendered against *Jacob Staley*, at the suit of *Elizabeth Birely*, on the 24th of October, 1821, for $1000, with interest from 1812, and costs. That a *fieri facias* issued thereon to March court, 1822, which was returned *Nulla Bona.*

The answers of the appellees, *John* and *Joseph Staley*, say, that they are willing to admit, though they have no personal knowledge on the subject, that the notes, bonds, and single bills exhibited by the complainants, show truly the amount due from *Jacob Staley* to them; and that suits were pending on them as alleged on the 16th of October, 1821. They deny that the deed executed by the said *Staley* to them on that day, conveyed his whole real estate; on the contrary they aver, that after the delivery to them of said deed, he was seized and possessed of real estate, both in *Frederick* and *Montgomery* counties, abundantly sufficient, as they believe, to pay the claims of the complainants. They deny that said deed was executed with a covinous, or fraudulent intent, or for the purpose of disturbing, hindering, or delaying any of the creditors of the grantor; and allege that the same was made *bona fide*, and for a good and valuable consideration. That the bill of sale of the personal property was also for a *bona fide*, and valuable consideration. They admit that at the time of their execution, they were informed, and believed that suits were pending against *Jacob Staley*, but to what amount they did not know, nor did they know that he was insolvent. They also admit that he died intestate, and insolvent.

The answers of the other defendants are not supposed to be material.

A general replication was filed to the answers, and a commission issued, under which proof was taken and returned; but as the evidence has no necessary connexion with the questions of law decided by the court, it is omitted.

It was agreed that the transcripts of the docket entries exhibited by the complainants, should be considered as if complete records had been made in those cases, and exhibited in this case.

The court (Shriver, A. J.) dismissed the complainant's bill with costs, upon which the record was brought by appeal to this court.

The cause was argued before Buchanan, Ch. J., and Martin, Stephen, Archer, and Dorsey, J.

*Taney,* (Att'y Gen'l U. S.) *Palmer,* and *Duckett,* for the appellants.

1. It has been objected, that this bill was filed by two, of many creditors. The answer to this objection is, that whether the unnamed creditors are parties or not, still according to the principles, and practice of the chancery court, they have a right to come in after the decree, and participate in the fund. They are therefore, in *substance,* parties, though not made so in terms by the bill. The same strictness in pleading is not observed in chancery as at law. *Tiernan vs. Poor and Wife,* 1 *Gill & Johns.* 230. This bill is essentially a creditor's bill. *Strike vs. McDonald and Son,* 2 *Harr. and Gill,* 220. *Ib.* 232, 233.

2. The next objection is, that there is no allegation that the complainants were creditors at the time the bill was filed. But the averment is, that *Staley* was their debtor by bonds, &c. at the date of the deeds, and that he died indebted, and insolvent; and as the bonds, &c. the evidences of the debt are produced, the legal presumption is, that they were unpaid when the bill was filed. It is a conclusion of law, and need not be averred.

3. The answer to the objection, that the complainants do not aver themselves to be judgment creditors, is that the record shows that fact, and as the whole record is exhibited, and made a part of the bill, it must have the same effect as if it had been copied into it. In *England,* the practice

is to copy the exhibit in the bill.   In *Maryland* the practice is different, it is merely referred to, and the prayer, that it may be taken as a part of the bill, gives it the same effect as in *England.*   By such prayer every part of the exhibit is considered as being actually incorporated into the bill. It is not merely evidence, but a part of the pleadings.   If the object was simply to make it evidence, the proper, and regular course would be to file it with the commission. Every fact contained in the exhibit is in substance brought before the court, by the prayer, that it may be made a part of the bill or answer.   Suppose a party pleads a deed to which recording is necessary, can it be said, that he must *aver* that it was recorded, although the deed itself shows that it was recorded?  The reference to the exhibit, was to show the situation of the debt at the time the bill was filed, and it appears that it had been brought to judgment, and that a *fieri facias* upon it had been returned *nulla bona.* The allegation however is, that the debt was in suit, and such was the fact notwithstanding the judgment, as the plaintiff was still pursuing his legal remedy to recover the money.   It is evident the pleader so understood the word suit, and though he may have been mistaken as to its technical meaning, if the court can see clearly what was intended it is sufficient.   *Tiernan vs. Poor and Wife,* 1 *Gill and Johns.* 230.

But it was not necessary to allege that judgments had been recovered.   The deeds are assailed upon the ground of fraud, which alone gives the court complete jurisdiction. There is nothing in the statute which says that the party seeking to set aside a deed upon the ground of fraud must be a judgment creditor.   This is not like those cases on which the chancery jurisdiction depends upon some defectiveness in the legal tribunals.   The jurisdiction here is original, and concurrent, and the relief likewise is original, and not ancillary.   In *Brinkerhoff vs. Brown,* 4 *Johns. Ch. Rep.* 679, there was in fact no judgment at the time the bill was filed, and the court does not say if

there was it must be pleaded. Contracts required by the statute of frauds to be in writing, need not be averred to be in writing, though the proof must show them to be so, and therefore it does not follow, that because a judgment is necessary to be proved, that it must be pleaded. But it was not necessary either to allege, or prove a judgment to have relief against these deeds.

In the first place, it is not a bill by a single creditor, but is substantially on behalf of all the creditors of the grantor. It prays that the property may be sold for their benefit, and of course, if there are judgment creditors, they would have the benefit of the fund. The proceeding is not under the act of assembly, which only gives the creditor a right to resort to the land, after the personal estate is exhausted. If in this case, the complainant should be required to sue the administrator, his judgment would not have been evidence, either against the heir at law, or the grantee. *Harwood vs. Rawlings' Heirs*, 4 *Harr. and Johns.* 126. *Gaither & Warfield vs. Welch*, 3 *Gill and Johns.* 262.

These deeds are good as between the parties to them, and of course the personal estate conveyed by them would not have been assets in the hands of the administrator; and as regards the land, a judgment against the administrator would not have been evidence to affect it. If the property in these deeds was only secondarily liable, the objection might be a good one, but they being fraudulent, the creditor has a right to go against it in the first instance. As real estate in *Maryland* is liable to be sold for simple contract debts, a judgment could not be required to create a lien upon it. The cases cited on the other side merely decide, that a judgment is necessary when the jurisdiction of the court of chancery is subsidiary, and not original, and concurrent, as here. *Coop. Pl.* 149. *Smithier vs. Lewis,* 1 *Vern.* 398. 1 *Eq. Cases Abr.* 132. *Copis vs. Middleton*, 1 *Mad. Rep.*556. The *American* cases establish the same proposition. It will be found in them all, that where judgments have been decided to be necessary, it has been

where chancery has been called upon to aid a court of law. and not to exert an original jurisdiction. And they are cases where a party seeking the aid of the court, has been asking for a preference; and not as here, that the property should be sold for the common benefit of all the creditors, according to their several rights. *Wiggins vs. Armstrong*, 2 *Johns. Ch. Rep.* 144. *Hendricks vs. Robinson, Ib.* 296.

The case of *Sluby* and *Jones*, in 5 *Harr. and Johns.* 381, was the case of a voluntary conveyance, and was only fraudulent if there were no other sufficient assets; and therefore the party impeaching it, was bound to show such insufficiency by proceedings at law. The circumstances of this case are materially different. Here the deeds are charged to be void, as being made to hinder and delay creditors, and if that effect is produced, it is of no consequence whether there are any other assets or not. Now if the fact should be, that there is other property in *Montgomery* county and elsewhere, as alleged in the answer, (though there is no proof of it,) still the creditors would be hindered and delayed, if they are compelled to go there in search of it. The cases which decide that a deficiency of the personal estate must be shown, are cases in which that deficiency is the basis of the equity jurisdiction to charge the land.

If however, this objection would have been valid at a different stage of the proceedings, and in a different way, still it cannot be made at the final hearing. It should have been taken by demurrer.

4. As to the objection that the personal representative should be before the court. Now in the first place the debt is admitted, and it is admitted that the deceased left no personal assets. Where then the necessity for the personal representative. He could neither controvert the debt, nor contribute to its payment. Besides, as these deeds are good as between the parties, all who have any interest are in fact before the court. *Dorsey vs. Smithson*, 6 *Harr. and Johns.* 61. And moveover, as the liability of this property does not depend upon the insufficiency of the other proper-

ty, there could be no necessity to make parties of those who are entitled to the other property.    The property contained in the bill of sale, would not be assets in the hands of the administrator, nor would the land descend to the heir at law.   *Dorsey vs. Smithson*, 6 *Harr. and Johns*. 61.

*William Schley* and *F. A. Schley*, for the appellee.

It is necessary to examine the *pleadings* as well as the *proof*.   The record presents some interesting points, apart from the main questions on the merits.

The bill charges that the two deeds severally marked No. 3 and 4, were made with intent to delay, hinder, and defraud the grantor's creditors.    The object of this bill is to vacate these deeds, and to obtain, as consequential relief, a decree for the sale of the real and personal property which they embrace.   The bill is preferred by *two* of the grantor's creditors.    They show that there are many *other* creditors, and that some of those other creditors hold *judgments* against the grantor, of an anterior date to any judgment of either of the complainants.    This introduces a question of practice.

1.  Ought not the other creditors to have been made parties to this proceeding, either in fact, or at least by representation of their interests?

(1.)  *As mere creditors*.   Two of many creditors cannot file such a bill independently; they must make all the other creditors parties, either *in fact*, by conjoining them as complainants, or by calling them in as defendants; or else by *representation* of their interests, by exhibiting the bill expressly in behalf of the complainants, and all other creditors who may come in, &c.   *Leigh vs. Thomas*, 2 *Ves. Sen.* 312.   *Hendricks vs. Robinson*, 2 *Johns. Ch. Rep.* 296.

(2.)  *As incumbrancers*.   The judgment creditors are interested not merely in the result of this suit, as are creditors at large; they are in fact *incumbrancers*, and have *a lien* on the real estate which is now sought to be *sold*.   Even

if the general principle above asserted cannot be maintained, still *this* branch of the objection is directly within the rule, " that all the parties interested in the *subject matter*, should be brought before the court." *Coop. Plead.* 33. *Cromwell vs. Owings*, 6 *Harr. and Johns.* 10. *Darne & Gassaway vs. Catlett*, 6 *Harr. and Johns.* 475. The rule is broadly laid down in *Clark vs. Long*, 4 *Rand.* 451. This is a proceeding *in rem.* It is not analogous to cases of proceedings to compel the performance of *a trust;* as by a legatee, or by a creditor against an executor, *in respect of* assets in his hands. Such latter proceedings are merely in *personam. Attorney vs. Cornthwaite*, 2 *Coxe's Cas.* 43. *Bedford vs. Leigh*, 2 *Dick.* 708.

2. The second point has relation to the requisite certainty in pleadings in equity. The complainants do not show, by any of the averments of their bill, either by direct allegation, or by the statement of *facts*, from which it would result as a legal consequence, that they were then creditors when the bill was filed.

(1.) Is this necessary? At law it would be clearly so. There it is not sufficient to show in a declaration, that a right of action existed at some given antecedent day. A subsisting *present* right must be shown. The plea of *solvit post diem* for example, would cover the whole time up to the day of the impetration of the writ; the declaration must have a like scope, or it would be insufficient on demurrer. The breach must be that the defendant hath not yet paid, &c. The position may be aptly illustrated by the familiar case of an action of debt against an executor. It will not suffice to aver non-payment by the testator; you must go further, and aver non-payment by the representative. It is admitted, that in equity the same categorical certainty is not required in all cases as at law; but whatever is necessary to make out the complainant's *title*, must be positively averred. *Coop. Pl.* 5, 6. So whatever is necessarily within the complainant's knowledge. *Ib.* And in general, there must be the same strictness in equity as at

law. *Mitf. Pl.* 294. *Beames' Pl. in Eq.* 8. 2 *Atk.* 632.
1 *Mont. on Pl.* 26.

(2.) If then this be necessary, has it been sufficiently
averred?

The bill was filed on the 10th February, 1823. The
complainants say that the grantor was indebted to them,
severally, on the 16th October, 1821; and that he was in-
debted *at his death*, which occurred in March, 1822; and
that he died *insolvent*. Now if it follows as a legal con-
clusion, that because the grantor was their debtor when he
made these deeds, and that he *died* so indebted, and was
then *insolvent*, the debts continued unpaid, and in action,
up to the time of filing this bill; then the averment of *these*
*facts* is tantamount to an averment that the debts *were* sub-
sisting, and unpaid when the bill was filed, but if such le-
gal conclusion does not follow, then the averment is *not*
tantamount, and not sufficient. The distinction must be
kept up between *pleading* and *evidence*. If the complain-
ants had sufficiently averred that their claims were subsist-
ing, and the answer had denied the allegation, and the
parties were *at issue* upon this *fact*, under the general re-
plication; then evidence that the grantor was indebted at
his death, would, upon the presumption of *continuance*, be
sufficient to throw upon the defendants, the necessity of
showing a subsequent discharge. It would in other words,
be open to the defendants to show, if they could, such sub-
sequent discharge. They might prove *payment* by the heirs
at law, by the personal representative, or by the sureties.
So they might show *a release*. The fact that the grantor
"died insolvent," does not essentially vary the case. The
term "insolvent" does not import either in fact or in law,
that he left *no assets*. He may have left enough to pay
*judgments*. A man is 'insolvent' who has not "*assets*" to
pay *all* his debts in *full*. The hypothesis, therefore, that
the complainants had no subsisting claims, is not wholly in-
consistent with the facts alleged. The grantor may have
been indebted to the complainants as alleged, and may

have died insolvent; and yet the complainants may have ceased to be creditors when the bill was filed.

3. The complainants are not in a condition to maintain this suit. In order to impeach these deeds, they ought to have pursued some further preliminary steps at law. To entitle them to affect the deed No. 3, they ought to have obtained judgments on their claims, so as to create a lien on the real estate of their debtor : and in order to reach the deed No. 4, they ought also to show the issuing of writs of *fieri facias,* and the return of *nulla bona* thereon, so as to show a lien on the personal property. They ought, in fine to show, that all remedies at law had been exhausted.

(1.) Is it necessary thus to show a lien ? It is a question of practice of much interest. That it is necessary, is laid down in many authorities. *Coop. Eq. Pl.* 149. *Mitf.* 115. *Wiggins vs. Armstrong,* 2 *Johns. Ch. Rep.* 144. *Hendricks vs. Robinson,* 2 *Johns. Ch. Rep.* 296. *Brinkerhoff vs. Brown,* 4 *Johns. Ch. Rep.* 677. *Screven vs. Bostick,* 2 *McCord's Ch. Rep.* 416. *Rhodes vs. Cousins,* 6 *Rand.* 190. *Gilpin vs. Davis,* 2 *Bibb,* 416. The point has never been expressly ruled in this State. In all the cases, save one, the complainants had obtained judgments, and sued out execution ; and in *Jones vs. Slubey,* 5 *Harr. and Johns.* 381, the Chief Justice remarks, that the complainant there had done every thing to entitle him to the aid of a court of equity. In the cases of *Strike vs. McDonald,* 2 *Harr. and Johns.* 191, the question was presented by the counsel in argument ; but its consideration in this court was necessarily occluded by the decision, that nothing which had been done in the cause, whilst it was pending in *Baltimore* county court, antecedent to its removal into the court of chancery, could be reviewed upon an appeal from the court of chancery. The question was not open on the record.

(2.) If, then, this be necessary, has it been sufficiently shown by the bill? The complainants do not say, in the body of their bill, that they are judgment creditors. They

say, that when said deeds were made, they were creditors, by *notes, single bills* and *bonds,* as shown by exhibit No. 1, to which they refer as part of their bill.    Exhibit No. 1 is a copy of *notes, single bills* and *bonds.*    They also say that the said deeds were made whilst *suits* were then pending on their said claims, and they refer to exhibit No. 2, in support of this averment.    They also say, that the said grantor was indebted *as aforesaid,* at the time of his death. If the complainants, therefore, are to be held strictly to their allegations, they do expressly aver that they are mere creditors at large, upon *notes, single bills* and *bonds.*    Can they now affect to be creditors of a higher grade—judgment creditors?    It is true, that exhibit No. 2, contains memoranda of *judgments* recovered by *Mrs. Birely* on *all* her claims, and of the issue of a *fieri facias* on one, and a return of *nulla bona* thereon.    This exhibit is twice referred to in the bill; and, in both instances, to uphold the allegation that *suits* were pending when the deeds were made.    The allegation relates to the precise time of the *factum* of the deeds, which was the 16th October, 1821.    It is not pretended that any judgments were *then* recovered; the memoranda shows that judgments were *afterwards* recovered. The question is, what is alleged *in the bill;* and it can hardly be conceived that the exhibit was adduced to show a subsequent *fact,* which occurred at a period long subsequent to the time to which the allegation relates.    It would be substituting *evidence* in the place of *pleading.*    Can it be seriously argued that the pleader foresaw the necessity of averring the recovery of judgments; and adduced exhibit No. 2, for that purpose? more especially as the averment would be *felo de se* in regard to one of the complainants; for the exhibit shows that *Holtz never* recovered judgment; his suit abated.    But the averments are conjoint; and it is not to be supposed that the pleader, to obviate the objection now urged, meant to aver the recovery of judgment by *one* complainant; and the non-recovery of the *other;* and to make the contrarient averments, by precisely the same

words. He cited the following authorities, as to the certainty which is required in pleadings in chancery. 1 *Vern.* 483. *Dick.* 362. 2 *Ves. jr.* 318. 1 *Ves. jr.* 51, 287. 9 *Ves.* 77. 5 *Conn. Rep.* 352, 592. 6 *Conn.* 37. 7 *Conn.* 342, 496.

It was admitted by the counsel below, as it appears from an agreement in the record, that these exhibits, although short copies, should be considered as full transcripts. It may, therefore be urged, that the *fact* of the recovery of judgment, by one of the complainants, does appear in the cause. Such is not the agreement. The agreement, as I understand it, is, that the short copies shall be considered as full transcripts. And as the short copies were adduced to uphold the allegation of *the pendency of suits,* the transcripts can avail only to perform the same office. It is not *a fact* in the cause, proved or admitted under the commission. But if such were the case, the fact could not be noticed. It is a well settled rule, that no evidence will be noticed as to any matters not alleged in the pleadings. *Clarke vs. Turton,* 11 *Ves.* 240. *Gordon vs. Gordon,* 3 *Swanst.* 472. *Williams vs. Llewellyn,* 2 *Y. and J.* 68. *Hall vs. Maltley,* 6 *Price,* 240. *James vs. McKernon,* 6 *Johns. Rep.* 565. *Hoye vs. Brewer,* 3 *Gill and Johns.* 153. *Chambers vs. Chalmers,* 4 *Gill and Johns.* 420. *Hayward vs. Carroll,* 4 *Harr. and Johns.* 518.

4. There is yet another preliminary question of some interest. The bill shows that the grantor had departed this life. Whether administration was ever had upon his personal estate or not, is not shown by the bill. No administrator is brought before the court, nor is any reason assigned for the omission. Ought not the personal representative, if any, to have been a party?

(1.) As to the deed for the personal property. It is very true, the personal representative, if any, would have no right to the personal property. *Dorsey vs. Smithson,* 6 *Harr. and Johns.* 61. The grantees would be liable, as executors *de son tort,* if the deed be fraudulent, and may

be sued in a court of law. *Dorsey vs. Smithson, ut sup. Farley vs. Farley,* 1 *McCord's Ch.* 516. In the case of *Chamberlayne vs. Temple,* 2 *Rand.* 397, it is said that a suit at law against them, as executors *de son tort,* is not necessary; but even that case determines, that the property is only liable in the hands of the donees, in default of assets in the hands of the rightful representative, and that the executor or administrator is a necessary party. *Vide* also *Sereur vs. Bostick,* 2 *McCord's Ch.* 416. *Bradford vs. Felder,* 2 *McCord's Ch.* 169. 2 *Hov. on Frauds,* 75.

(2.) As to the deed for the real property. Land in this State is only liable in aid of the personalty, and as auxiliary assets for the payment of debts. *Wyse, et al. vs. Smith and Buchanan,* 4 *Gill and Johns.* 295. In the case of *Fordham vs. Rolf,* 1 *Tam.* 1, (abridged in 2 *Chitty's Dig.* 1491.) it was held, that in a creditor's suit for the sale of land, *where there was no personalty,* and the executor refused to prove the will, that administration with the will annexed must be, nevertheless, obtained in order to show a deficiency of assets.

It was admitted, under the commission, that no administration had been obtained on the grantor's estate. Even if this fact had been set forth, by way of excuse in the bill, it could not avail, if the authorities referred to be correct. But it is not put in issue by the pleadings, and cannot therefore be noticed. Even if a title to relief were made out in evidence, it is a good objection that the bill is not adapted to the case made. The court can only decree *secundum allegata et probata.*

[The counsel here proceeded to discuss the various questions of fact and law, upon the merits; and went at large into the examination of the proof. In the course of his argument, he asserted the following propositions.]

1. The relationship between the parties is not an *indicium* of fraud. It may be a ground on which to base a suspicion; it may strengthen a presumption; but it will not, independently, generate such presumption. In the *Scotch*

law, transactions between parties conjunct are, on that iso-
lated ground, deemed open to suspicion; but even by that
law, they do not presume fraud *ab ante.* The presumption
must be raised by something *aliunde;* mere affinity or con-
sanguinity without more, is not sufficient.

2. The deed for the personal property was clearly *bona
fide.* The consideration expressed was the full and uncon-
tradicted value of the property. It was fully paid. The
possession of the property was changed without trust; for
the evidence, as to a secret trust, whatever be its effect,
does not apply to *this* deed. The party had a right to pre-
fer these creditors; and that was unquestionably his in-
tention. Such a deed is good at common law. *Twyne's
Case,* 3 *Co.* 81. Our acts of Assembly, in relation to in-
solvents, cannot apply, as the grantor never became a peti-
tioner. *Owing and Cheston vs. Nicholson and Williams,* 4
*Harr. and Johns.* 107. *Harding vs. Stevenson,* 6 *Harr.
and Johns.* 266. Besides, it is not alleged or proved, that
it was made with *intent* to become a petitioner. *Kennedy
vs. Boggs,* 5 *Harr. and Johns.* 411. The pendency of the
suit is only a badge of fraud, and not in itself constructive
fraud. Its only effect is to put the consideration, in ques-
tion. *Rob. on Fraud. Con.* 577. But a conveyance by a
debtor to one creditor, pending a suit by another, in pay-
ment of the former's debt is good. *Rob. on Fraud. Con.*
436. *Twyne's Ca.* 3 *Co.* 81. *Will vs. Franklin,* 1 *Binn.*
502.

3. The deed for the real property is impeached in gen-
eral terms, as made with intent to delay, hinder and defraud
the grantor's creditors. The bill contains no specific allega-
tions of fraud. From the scope of the interrogatories,
however, it would seem that it was supposed, that the
consideration was merely feigned, and the deed voluntary.
The bill does not charge that the expressed consideration
was *inadequate;* nor is there any charge of the existence
of *a trust.* The complainants, however, have offered proo
as to the *value* of the estate; and they have endeavored to

prove *a trust* in the grantee, for the payment of debts generally. He contended, upon the proof, that the consideration expressed in the deed was the full value of the estate, subject, as it was in part, to a heavy mortgage. The consideration was fully paid, partly by the surrender of valid claims against the grantor, partly by the grantee's own notes. The fact that some of the claims were not then due, is no *indicium* of fraud under the statue of *Elizabeth.* It would be material under the bankrupt laws of *England. Thompson vs. Freeman,* 1 *Term. Rep.* 156. *Hartshorn vs. Slodden,* 2 *Boss. and Pull.* 583. *Phœnix vs. Ingraham,* 5 *Johns. Rep.* 428. It would be strong evidence of an intent to give a preference under our insolvent laws; but they are not in question now. Apart from the bankrupt laws and the insolvent laws, a debtor, unsolicited and unpressed may, *ex mero motu,* give such preference, and the note, although not due, is a valuable consideration. *Vide* the argument of *Heath, Chambre and Rooke,* justices, in the above cited case of *Hartshorn vs. Slodden.* Besides this, the grantees were sureties for the grantor in all these immature notes; and an engagement by a surety is, in itself, a valuable consideration. *Stevens vs. Bell,* 6 *Mass. Rep.* 342. *Howe vs. Ward,* 4 *Green.* 199. *Crosby vs. Crouch,* 11 *East.* 256. The fact, that the consideration was in part made up of the grantee's own notes, is no argument of fraud. A bond or other security, by a purchaser, is a valuable consideration. *Seward vs. Jackson,* 8 *Cow.* 432, 454.

4. But if the price was inadequate, that will not, *per se* invalidate the deed. It may avail as evidence of fraud; but then the inadequacy must be gross; so gross as to shock the conscience. *Copis vs. Middleton,* 2 *Madd. Rep.* 232. *Watkins vs. Stockett,* 6 *Harr. and Johns.* 435.

5. Whether the deed be fraudulent or *bona fide,* is a question of law upon the facts. It is the judgment of law upon facts and intents, when these are ascertained. *Sturtevant & Keep vs. Ballard,* 9 *Johns. Rep.* 337. *Jackson vs. Matter,* 7 *Cow.* 301. He contended, that the transaction

was *bona fide* in fact: and not constructively fraudulent from any of the attendant circumstances, as disclosed in the evidence.

6. The subsequent declaration of a grantor cannot be heard to impugn his own deed. *Nemo allegans suam turpitudinem est audiendus.* He could not be called as a witness; although the grantee, in that case, would have the benefit of cross examination. *Hearn vs. Soper,* 6 *Harr. and Johns. Rep.* 281. *Conolly vs. Howe,* 5 *Ves.* 700. *Chess vs. Chess,* 1 *Penn. Rep.* 38. In *Merrill vs. Meachen,* 5 *Day* 341, evidence was received of a grantors declarations as part of the *res gestæ;* and its admissibility is expressly put on that ground. So in *Kolb vs. Whitely,* 3 *Gill and Johns.* 195, the declarations of the insolvent were admitted as part of the *res gestæ;* and the court below restricted the admission of declarations to such as were antecedent to the transaction. So in the case of the *United States vs. Gooding,* 12 *Wheat.* 468, the acts and declarations were received as part of the *res gestæ;* and a fraudulent combination was first established. He also cited on this point, *Apthorp vs. Comstock,* 2 *Paige,* 488. *Wilbur vs. Strickland,* 1 *Rawle.* 458. *Retenbach vs. Retenbach,* 1 *Rawle.* 362. *Beach vs. Catlin,* 4 *Day,* 292.

7. But if the grantor's declarations be received, they would not establish fraud. The intention to keep the property out of the sheriff's hands would not be fraudulent, without more. The object of the deed was, manifestly, to secure the grantees, in preference to other creditors; its necessary operation, therefore, and its direct object, was to disappoint other creditors. Some were pressing their claims to judgment, in order to get a preference and seize the property: he chose to give a preference to these grantees. Could he have done this, if he had waited until after the seizure by the sheriff? He cited *Meux qui tam vs. Howell,* 4 *East.* 1. *Wilt vs. Franklin,* 1 *Binney* 521. So the declaration of the grantor, that his sons were to go on and sell his property and pay his debts is immaterial in this case.

There is no allegation of such a trust, and the testimony is inapplicable: but if such proof can be noticed, it would not bring this deed within the statute of *Elizabeth.* The questions put by the judges to the counsel, in argument, in *Meux qui tam vs. Howell,* 4 *East.* 9, are decisive of their opinions on this very point. It might superinduce upon the grantees the responsibilities of a trust for the benefit of creditors, in a proceeding adapted to such a case. But the object of this bill is not to enforce this *trust;* but to vacate the deed, as fraudulent within the statute. The case of *Naylor vs. Fosdick,* 4 *Day,* 146, is very different. The complainants cannot now abandon their ground, and seek to *uphold* the deed, and engraft upon it a *secret trust,* when the scope of the bill was to *vacate* it. A bill for one purpose cannot be made to answer another and different purpose.

DORSEY, J., delivered the opinion of the court.

Of the fraudulent character of the conveyances in question, on taking a full survey of all the facts and circumstances of this case, and drawing such inferences as a jury might reasonably make, we entertain no doubt. In deciding in favor of the appellants the various questions of law, presented by the able and ingenious argument on the part of the appellees, we cannot but admit, that some of our conclusions have been adopted, not without difficulty and hesitation.

It was insisted in behalf of the appellees, the conceding the appellant's right to relief, upon the ground of the invalidity of the deeds, under the statute of *Elizabeth,* yet that the decree of the county court denying such relief, could not be reserved, on account of various defects in the proeedings of the appellants, by which it was sought; and first, that the bill of complaint was filed in the name of two creditors; whereas, all of them, or one only, should have been made a party complainant. This is a mere formal objection, not taken in the court below. If it had been, it might, (if sustainable) have been removed by amending the

bill. The appellees admit that one creditor may sue alone. Then why may not two? Rules of pleading in equity are not governed by the same technicality as to matters of form, that controls proceedings at law. Courts of equity look to substance, not form. The distinction then, (if it exist at all, which we cannot admit,) is a mere matter of form; nothing in reason or substance can be urged in its support. If one of many creditors proceed, and be successful, the fund is retained in chancery until all the creditors are notified to come in, and assert their claims. The same practice prevails on like proceeding by two.

Secondly, it is alleged, that it is not stated in the bill, according to the usual form, that the complainants proceed on behalf of themselves and other creditors.

This objection we think fully answered, and the requisition, if it exist, substantially gratified, by the prayer in the bill, that the property be sold for the benefit of the creditors of *Jacob Staley.*

The third defect suggested, is, that the bill does not show or allge, that the complainants were creditors at the time of filing their bill; but only at *Jacob Staley's* death. If it were conceded, that this fault would have been fatal on demurrer, it cannot avail the appellees, as the question now arises before the court. The strong, if not necessary implication of the existence of the complainant's claims, at the time of the filing of their bill, clearly arises from the facts therein set forth; but that implication is made irresistible by the answer of the appellees, who admit, that the notes, single bills, and bonds exhibited, show the "true amount of the debts due from *Jacob Staley deceased*, to the complainants.

The fourth defect relied on, is, that the complainants stand before the court, as simple contract creditors only; whereas, to entitle themselves to the relief prayed for, they should have set forth in their bill, the judgments to bind the land, and *fi fa's* to bind the personal property. In sustaining the appellants in the teeth of this objection, we do not

mean to shake the general principle, that where a creditor seeks the aid of a court of equity, to pursue property fraudulently conveyed away, a judgment must first be obtained against the debtor, before his lands fraudulently granted can be reached; nor that in such a pursuit of personal property, a *fieri facias* also must first have issued.   In examining the authorities referred to by the appellees, to sustain their position, chancellor *Kent*, in reference to personal property says, in *Hendricks vs. Robinson*, 2 *Johns. Ch. R.* 296, "the preliminary step which seems to be required, is, that the judgment creditor should have made an experiment at law, and *bound* the property by actually suing out execution ; " and in *Brinkerhoff vs. Brown*, 4 *Johns. Ch. R.* 677, "if he seeks aid as to real estate, he must show a judgment creating a lien upon such estate ; if he seeks aid in relation to personal estate, he must show an execution giving him a legal preference, or liens upon the chattels." And in *Shirly vs. Watts*, 3 *Atk.* 200, a judgment creditor who had not taken out execution, having brought a bill to redeem against the mortgage of leasehold interest, *Lord Hardwick* decreed, that "the bill must be dismissed, because till execution, the plaintiff has no lien on the leasehold estate." If then the creditors' claims to relief rest upon their liens thus to be acquired, (a position not entirely free from doubt) it follows as a necessary consequence, that out of the fund pursued, if land, they must be paid according to the seniority of their judgments : if personal property, according to their respective priorities, acquired by the delivery of their several *fi fa's* to the sheriff.   Would it for a moment contend, that a court of equity in *Maryland*, in the distribution of funds brought within its jurisdiction, by a proceeding of such a character as the present, would sanction any priorities asserted in virtue of judgment, rendered against his personal representative, after the death of the fraudulent grantor ?  We think not.   All creditors without judgments in the life time of the fraudulent grantor, would come in *pari passu*.   No subsequent judgment would cre-

ate any lien. The frequent decisions of the courts of this State have long since settled, so as to preclude all debate on the subject, that a judgment against an executor or administrator, not only does not *bind* real assets, but that it is not even *prima facie* evidence of a debt, where the real estate of a deceased debtor has been sold for the payment of all debts against him. Of what possible avail then, would the required judgment against the executor or administrator of *Jacob Staley* be, to charge the real estate in question? It has not been intimated that any judgment should be shewn against the heirs of the deceased. Indeed, having no assets by descent, such a judgment could not be obtained against them.

But suppose we are wrong in this view of the subject; and that the inefficacy of the judgment as a lien does not of itself dispense with the necessity for its existence; still we are of opinion, that the objection, as now presented to us, ought not to be sustained. It is raised for the first time, as far as the record informs us, in the appellate court, after the parties have incurred great expense, and consumed much time, in litigating their rights upon the merits of the controversy. Had it been relied on in court below, either by demurrer, a plea in bar, or as a substantive ground of defence in the answer, it could have been easily obviated. As now presented, it works gross injustice, and is a complete surprize on the complainants. It becomes this court therefore, to listen to it with a reluctant ear, and to be even astute in the discovery and combination of the facts in the cause, that the unjust operation of this unseasonable objection may be frustrated; and we feel ourselves warranted by the pleadings and circumstance of this case, in drawing such inferences of fact as enable us to surmount this difficulty. It is not a defence set up in the answer. It forms no part of the issues in the case. The complainants were not called on to account for the omission. If the deceased left no assets, the natural presumption is, that no letters of administration would have been taken out on his

estate; that had he left such assets, letters would have been granted; and the fair inference in that event is, that the appellees in one of the three usual modes in which their object could have been effected, would have required that the administrator might be brought before the court, and be made to apply the effects in his hands to the satisfaction of the complainants' debt; thus extinguishing their right to prosecute any claim against the property conveyed. Not having done so, at this stage of the cause, the just conclusion is, that no administration was ever granted on the deceased's estate, because he left none; and this conclusion is rendered in the highest degree probable, if not irresistible, when we advert to the facts, which we assume as established by the record; that *Jacob Staley*, at an advanced age, to hinder and defraud his creditors, about five months before his decease, had conveyed away all his property, both real and personal, and from the time of such conveyance until the day of his death, lived as a dependent with one of the fraudulent grantees; and was admitted by all parties to have been insolvent at the time of his death. Weighing all these facts and circumstances in connexion, and adverting to the time at which this question has been agitated, we deem ourselves justified in inferring, that there exists no personal representative of the deceased, against whom a judgment could have been recovered; or to answer another objection raised by the appellees, who ought to have been before the court as a party to these proceedings.

But, say the appellees, even although it were proved that there were no assets, the complainants were bound to have taken out letters themselves, in order that proper parties might have been before the court, and the necessary preliminary judgments obtained. Would that have been accomplished by their administering? Could they sue and recover judgments at law, or file bills in a court of equity against themselves? Nay, would they not have been obliged to adopt the same course of proceeding, and established their claims in the very same way, if they had administered,

which they are now prosecuting without such administration. Where then the advantage or necessity of this unimportant, superfluous issue of letters of administration.

The aforegoing views of this case, render it unnecessary for us to consider the point so much controverted in the argument, whether the complainants' exhibit No. 2, is any further to be regarded as a part of the bill, than to show the precedency of the suits, of which it was referred to as the proof.

The bill having charged that by the deeds complained of, *Jacob Staley* had conveyed to the appellees all his real and personal estate, and their answer having denied that fact, and averred that after the delivery of the deed to them, he "was seized and possessed of real estate, both in *Frederick* and *Montgomery* counties, abundantly sufficient" as they believed, to pay the claims of the complainants in this behalf," it was insisted that the defence is sufficiently established by the answer, and is a bar to the relief which has been sought by the bill. To this doctrine we cannot accede. The fact of *Jacob Staley's* owning other real estate in *Frederick* and *Montgomery* counties, is a matter put in issue by the appellants; and being an affirmative allegation, the *onus probandi* rests upon the appellees. Aware of this, they have attempted to prove it, but by testimony inadequate to the object. The mere production of deeds of conveyance, unaccompanied by any proof of the existence of the property conveyed, and the title of the grantor thereto, or his possession thereof, or the possession thereof by the grantee, is wholly insufficient for that purpose. In *Sands vs. Hildreth,* 14 *Johns. Rep.* 499, Spencer, J., says, "it has been argued, that *Sands* (the grantor) might have had property abundantly sufficient to satisfy his creditors, independently of the lands sold to the respondent. This however is not proved, and if it were true, the appellant was bound to make out the fact. Not having done so, the inevitable conclusion is, that *Sands* had no other property, out of which his creditors could obtain satisfaction."

But suppose the allegation as to real property be true, it forms no barrier to a decree in favor of the appellants. To be so, it should have alleged not merely a sufficiency of other estate to pay the claims of the complainants, but all the debts due by *Jacob Staley*.

It has been attempted to support the deed in question, on the ground, that being executed with a view to a sale for the payment of the debts of all the creditors, it stands untainted by fraud. If such were the object of the instrument, it should have formed a part of its contents, or been elsewhere reduced to writing. Being upon its face, an absolute deed of bargain and sale, and being proved not to have been a *bona fide* conveyance, as such, it is covinous and fraudulent as against the complainants, and in violation of the statute of *Elizabeth;* nor can it be bolstered up by the fact of there having been a secret oral contract between the grantor and grantees, that the property conveyed should be held in trust, and sold for the benefit of the creditors of the grantor. The answer set up no such defence. Nor can it be supported on that ground, even if in a proper state of the pleadings, it might be so relied on. The necessary tendency of such a transaction is covinous and fraudulent, so far as the pursuing creditors are concerned. A secret contract so made could not be enforced, either at law or in equity, at the suit of the grantor or his creditors. The deed was executed according to the intention of the contracting parties; no mistake or surprise in obtaining it; nor was any fraud, duress, or imposition practised upon the bargainor. The secret agreement is a nullity under the statute of frauds, and there is no head of equity jurisdiction, under which relief could be successfully sought, on such a contract. A court of chancery should therefore stamp on it the mark of reprobation.

The effort which was made for the rejection of the testimony of *Joseph Miller*, on the ground of its being given in answer to a leading interrogatory, is wholly without foundation, as all the material facts to which he deposed, were

elicited by interrogatories which stand free from all excep-
tion.

DECREE REVERSED, and a decree was passed by this
court for a sale of the property in the proceedings men-
tioned.

BUCHANAN, Ch. J., dissented.