# James Baxter and wife, and others, *vs.* Septimus D. Sewell.

A deed from a father to his daughter, voluntary upon its face, the consideration expressed being "natural love and affection," cannot be supported by showing by parol, that the land conveyed by the deed was purchased and paid for with the daughter's money.

Parol proof is inadmissible to vary the considerations stated in deeds, and thereby either to alter their character, or to maintain them when impeached for fraud, by showing considerations differing from those mentioned in them, though evidence of the same kind of consideration, varying only in amount from that expressed, may be offered.

An indebtment at the time of executing a voluntary conveyance is only *prima facie*, and not conclusive evidence of fraud even as to a prior creditor.

The presumption of fraud arising from such indebtedness may be repelled by proving, that the grantor, at the time of the gift, was in prosperous circumstances, possessed of ample means to pay all his debts, and that the settlement was a reasonable provision, according to the child's station and condition in life.

But if such indebtedness be shown, the deed is *prima facie* fraudulent as to

creditors, and the *onus* is thrown upon the grantee, of establishing the circumstances which shall repel the fraudulent intent.

Where it was admitted by the answer that the grantor had become poor and dependent upon his daughter for a home and support, and there was no proof that he held any other property than that conveyed by the deed, such deed being voluntary, is void as to pre existing creditors.

Resulting trusts, implied by law from the manifest intention of the parties and the nature and justice of the case, are expressly excepted from the statute of frauds, and the fact of payment may be established by parol, but this fact must be made out by plain, direct and unequivocal evidence.

A father made a voluntary conveyance of lands to his daughter in 1819, but continued to occupy them until his death in 1842. In 1824 the lands were sold at sheriff's sale under judgments against the father, and in 1831 conveyed by the sheriff to the purchaser, who in 1839 leased them to the father, by lease signed by both parties. After 1842, the daughter and her husband entered, claiming under the deed of 1819, and in 1849, the devisee of the purchaser filed his bill to vacate said deed. Held:

1st. That as there was no clear evidence of possession by the daughter and her husband prior to 1842, and the lease being a clear recognition of the purchaser's title by the father, and the possession subsequent to the lease being a tenancy, and therefore not to be used against the purchaser, the lapse of time from 1842 to 1849, when the bill was filed, was too brief to bar relief.

2nd. The deed from the sheriff and the lease both being on record, subsequent purchasers from the daughter and her husband cannot be treated as *bona fide* purchasers without notice of complainant's title.

3rd. If such purchasers were claiming against a mere equitable title, the circumstances of the case were such as to have put them upon inquiry, which is equivalent to notice.

APPEAL from the Court of Chancery.

The bill in this case was filed by the appellee on the 20th August 1849, and states, that Joshua Swan, of Baltimore county, deceased, was, in his lifetime, possessed of certain lands in said county, which, on the 22nd October 1819, he conveyed to his daughter Emily, now the wife of the appellant, James Baxter, *in consideration of the natural love and affection* which he bore his said daughter; that before and at the time of said conveyance, made without proper and valid consideration, he was indebted, among others, to Charles S. Sewell and Matthew Murray, and that said conveyance was made fraudulently and with intent to cheat and defraud his

creditors; that said Swan, after said conveyance, retained possession and exercised rights of ownership, receiving the rents and profits therefrom; that at September term 1821 of Baltimore county court, Sewell and Murray, respectively, recovered judgment for a large sum of money for debts due and owing prior to said conveyance. That writs of *fi. fa.* were issued upon these judgments, and the property was sold thereunder and purchased at sheriff's sale by Sewell; and that Swan being in possession at the time of the sale, acknowledged the title of Sewell and consented to become his tenant at a certain rent, and that he continued to pay moneys on account thereof until his death in 1842.

That after his death, Baxter and wife entered into possession, and with knowledge of the fraudulent character of the said deed, and the title of Sewell as purchaser, and of the lease aforesaid, conveyed away, in the years 1845 and 1847, respectively, portions of said premises to the defendants, Parlett, Moore and Buckingham, who were aware at the time of the fraudulent origin of Baxter and wife's pretended title. That Sewell has lately died, leaving a will, and has thereby devised said premises to complainant and his heirs; the complainant so entitled has claimed payment of the rent reserved, but Baxter and wife have declined to pay, denying complainant's right thereto. The bill then prays, that the deed from Swan to his daughter Emily, and the several conveyances from Baxter and wife to the parties grantees, may be adjudged to be fraudulent and void, and delivered up to be cancelled, or declared to operate only by way of assignment of the interest of Swan in said premises, as lessee as aforesaid, and for general relief.

The answer of Baxter denies all personal knowledge of the matters charged in the bill. The answer of his wife alleges, that the property was originally paid for out of her money, to which she became entitled as legatee of her uncle, James Helm, and that the consideration moving to Swan, her father, was this and other money belonging to her, which he had appropriated to redeem a mortgage upon property in Baltimore city, owned and possessed by him; she utterly denies that said property was conveyed to her without valuable consideration and with intent

to defraud creditors; she denies all knowledge of her father's indebtedness to Sewell and Murray, prior to the execution of said deed. She admits that her father occupied said lands until his death; that she resided there during a portion of the time, but having means beside the profits of the lands, from feelings of kindness to her father, who was poor and afflicted, she permitted him to occupy the same, not thinking to impair her title thereby. She and her husband admit, that after the death of her father they entered into possession, in and by title of the deed of the 22nd October 1819; they deny that they had knowledge of the deed of Swan to Sewell, or of the lease from Sewell to Swan, and that at the time of executing the same, Swan had any title whatever; they admit that they have sold portions of said land to the persons aforesaid, but that it was done honestly and for good and valuable considerations; they admit the demand for rent and their refusal to pay.

The answers of Parlett, Moore and Buckingham, grantees from Baxter and wife, aver, that they purchased the several parcels of land conveyed to them respectively, fairly and for a valuable consideration, under the belief that the title of Baxter and wife was good, and that they acquired by their several deeds a safe and unincumbered fee-simple estate.

The various deeds and judgments were proved under the commission, as well as a single bill from Swan to Sewell for $380, dated August 10th 1816. The deed from Swan to his daughter Emily, of the 22nd of October 1819, recites that it was made in consideration of natural love and affection and five dollars money paid. Swan purchased the lands in controversy at a sheriff's sale, in 1818, and received a deed therefor from the sheriff, on the 28th of October 1818. The sale to Sewell, under his judgments, was on the 20th of July 1824, but he did not obtain a deed from the sheriff until the 22nd of April 1831. Sewell executed a lease of the lands to Swan, on the 15th of April 1839 for ninety-nine years, renewable forever, at the yearly rent of $53, which, as well as all the deeds above mentioned, was duly recorded. Some proof was also taken to sustain the averments of the answer, particularly that Swan, about the time of the purchase, frequently declared

that he had purchased said land with the money of his daughter, and promised he would make her a deed for the same. The chancellor, (JOHNSON,) decreed the deed of the 22nd of October 1819, so far as it related to the property purchased by Sewell from the sheriff, and the deeds of the same property from Baxter and wife to Parlett and others, to be vacated, and defendants appealed. Accompanying this decree, the chancellor delivered an opinion, which is reported in *2nd Md. Ch. Decisions,* 447, in which, as well as the report there made, a more extended statement of the facts of the case will be found.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Coleman Yellott* for the appellant.

1. The complainant having applied to a court of equity for relief, the defendants can rely upon all equitable defences, and if the equities are equal the court will not interpose, the rule being, *"in equali jure melior est conditio possidentis."* 1 *Story's Eq.*, sec. 64, (c.)

2. Equity discountenances laches; and the extraordinary neglect of the complainant and his testator, in failing to assert their alleged title until *thirty years* after the execution of the deed of October 1819, is a bar to the relief now asked. 1 *Story's Eq.*, sec. 64, (a.) 2 *Story's Eq.*, sec. 1520, *and note* 3.

3. There is no proof in the record, that the deed of October 22nd, 1819, was executed by Joshua Swan "to delay, hinder and defraud" his creditors. 1 *Story's Eq.*, secs. 353, 362, 365. There is not any satisfactory evidence to prove even that Sewell was a creditor of Swan at the time of the execution of said deed; or that Swan was at that time indebted to any party except his daughter Emily, one of the appellants.

4. Parol evidence was admissible to explain the real consideration for the deed of October 22nd, 1819, the consideration mentioned in the deed itself being not merely natural love and affection, but also *five dollars money paid.* The evidence produced tended to prove "not a different consideration, but

the same kind of consideration, *differing only in amount;*" and was therefore admissible. *Cole vs. Albers and Runge,* 1 *Gill,* 423. 2 *Hilliard on Real Property,* 275, 276, 278. The parol evidence was also admissible, to show the *bona fides* of the transaction, and thus disprove the charge of *fraud,* for which alone the deed could be avoided. *Clagett vs. Hall,* 9 *G. & J.,* 83, 91. *Harris vs. Alcock,* 10 *G. & J.,* 248. 11 *Wheat.,* 212, 213, 214, 215.

5. Even if the deed of October 1819 is void, still the deed from Murray to Swan, of October 28th, 1818, operated as a *resulting trust,* to pass a valid title to the defendant, Emily A. Baxter, Swan having made the purchase with her money. *Hollis vs. Hollis,* 1 *Md. Ch. Dec.,* 482. 4 *H. & J.,* 556, 557. *Hays vs. Hollis,* 8 *Gill,* 363. *Boyd vs. McLean and wife,* 1 *Johns. Ch. Rep.,* 582, 586. *Ambrose vs. Ambrose,* 1 *Peere Williams,* 322. 2 *Wash. C. C. Rep.,* 445, 446. 4 *Kent's Com.,* 305. 2 *Story's Eq.,* secs. 1201, 1211.

6. The defendants, Parlett, Buckingham and Moore, having purchased *bona fide* and without notice of any claim on the part of Sewell, will be protected in their purchases by a court of equity. 1 *Story's Eq.,* secs. 381, 409, 434.

*J. Shaaff Stockett* and *Thos. S. Alexander* for the appellees contended:

1. That the deed of the *22nd October* 1819, from Joshua Swan to his daughter Emily, is void as being voluntary and without valuable consideration, and was intended to delay, hinder and defraud the creditors of the grantor. *Salmon vs. Bennett,* 1 *Conn.,* 542. 11 *Wheat.,* 211, 213. 8 *Wheat.,* 250. 1 *Story's Eq.,* *notes to secs.* 362, 364. 17 *Eng. Ch. Rep.,* 344. 5 *Gill,* 449.

2. That parol proof is inadmissible to vary the consideration stated in said deed, either to alter its character or to maintain it when impeached. And if otherwise, there is no proof that said deed was founded on a valuable consideration. 1 *J. J. Marshall's Rep.,* 390. 6 *H. & J.,* 27, *Wesley vs. Thomas. Hurn vs. Soper, Ib.,* 281. *Watkins vs. Stockett, Ib.,* 444. 1 *H. & G.,* 201, *Betts vs. Union Bank.* 5 *G. & J.,* 432. 1 *Gill,* 84, 412.

3. That the deed of the 28*th October* 1818, from the sheriff to Swan, cannot be successfully relied on to create a resulting trust in favor of Mrs. Baxter, by showing that the consideration money paid by Swan to the sheriff was the money of Mrs. Baxter, even if the evidence were sufficient, (as it is not,) to prove the allegation. 4 *Kent's Com.*, 304, 305, and notes and cases therein referred to. 4 *H. & J.*, 556, 557. *Willis vs. Willis*, 2 *Atk.*, 71. 2 *Story's Eq.*, 1201, 1201 *(a.)* To create a resulting trust, there must be an actual payment of the money by the party, in whose favor the trust is sought to be set up. 1 *Johns. Ch. Rep.*, 582.

4. That lapse of time cannot be urged to bar the complainant of his rights, as the said Swan continued in the possession and enjoyment of the said premises, under the title of the appellees' testator.

Tuck, J., delivered the opinion of this court.

The appellants' solicitor has suggested no argument upon which the decree in this case should be disturbed. The law and the facts are so fully discussed by the chancellor, in his opinion, that we shall content ourselves with affirming the decree as to the first five points presented on the part of the appellants, for the reasons assigned by him. Upon the sixth point little need be said.

We do not think that Parlett, Buckingham and Moore are to be treated as *bona fide* purchasers without notice of the title of the complainant's testator. Swan had lived upon this property from the conveyance to his daughter to the time of his death, using and dealing with it as his own. It is true that his deed to Mrs. Baxter was on record, from which it might have been inferred that the title was in her. But it must be remembered, that the sheriff's deed to Sewell and his lease to Swan were also recorded, and were notice to these defendants that Sewell claimed title to the property. They purchased under Baxter and wife in the face of this notice, and, if their vendors had no title, they cannot complain if the owner of the property asserts his rights. If they were claiming against a mere equitable title in Sewell, the circumstances of the case

were such as to have put them upon inquiry, which is equivalent to notice. 5 *Gill*, 483. 1 *Md. Rep.*, 415. Coming in under a party who had no title, as against a prior legal title, they can assert no better equity than those under whom they claim.

*Decree affirmed with costs.*