PATRICK H. PHILBIN

*vs.*

WILLIAM H. WATSON and SARAH E. PHILBIN, Administrators of Charles J. Philbin, Deceased.

*Property in name of party not the purchaser: resulting trust.*
*Appeals: record; time for printing; rule 34; no penalty.*

Where the purchase price is paid by one person and the title is taken in the name of another, a resulting trust arises in favor of the person paying the purchase money, and the holder of the legal title becomes a trustee for him.          p. 501

The taking of testimony in open court before the Chancellor is to be commended, as it affords the most favorable opportunity to pass upon the credibility of witnesses and the value and weight of their testimony.          p. 501

There is no provision in Rule 34 of the Court of Appeals that an appeal shall be dismissed for non-compliance with the rule, and there is no penalty of any character for non-compliance; and when the record is in fact printed and before the court when the case is called for argument and no delay in the hearing of the case is caused by the failure of the appellant to comply with the rule, the Court of Appeals may deny the motion to dismiss.          p. 504

*Decided December 13th, 1916.*

Appeal from the Circuit Court of Baltimore City. (Dawkins, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Patrick H. Philbin, in propria persona,* submitted a brief for the appellant.

*J. LeRoy Hopkins* (with whom was *Osborne I. Yellott* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

On the 28th of March, 1905, the Equitable National Bank of Baltimore granted and conveyed to James Callahan, his personal representatives and assigns a leasehold lot of ground and improvements thereon known as No. 1801 Maryland avenue, in the City of Baltimore. The consideration stated in the deed was the sum of five dollars, but the actual consideration paid, as appears by a receipt of the grantor signed by J. D. Ferguson, its president, was $1,088.06. This deed was not left for record among the Land Records of Baltimore City until July 20, 1908, and on that day Callahan executed a deed by which the property was granted and conveyed to Patrick H. Philbin. The consideration expressed in this deed is the sum of $2,000. The evidence, however, is positive and undisputed that Callahan paid nothing for the property to the Equitable National Bank, and was not aware at the time that the title had been placed in his name. It is equally clear and undisputed that Patrick H. Philbin paid no consideration for the deed of July 20, 1908, which was not left for record until January 4, 1909.

Charles J. Philbin, a brother of Patrick H. Philbin, died intestate in the City of Baltimore on the 25th day of December, 1914, and letters of administration upon his estate were granted by the Orphans' Court of Baltimore City to William H. Watson and Sarah E. Philbin, the appellees on this record. On June 1st, 1915, the administrators filed a

bill of complaint in the Circuit Court of Baltimore City against Patrick H. Philbin in which they prayed:

"(1) That the said defendant, Patrick H. Philbin, may be decreed to hold the above described property in trust for your orators as administrators of the estate of the said Charles J. Philbin, and that the said defendant may be required to convey the same to them as such administrators.

"(2) That the said defendant may be enjoined and restrained from disposing of said property (other than a conveyance of the same to your orators) pending a final decree in this cause.

"(3) That a receiver *pendente lite* may be appointed to collect and hold the rents due and in arrears and which may hereafter fall due from said property and to have entire charge of and to exercise full control over the said property pending a final decree in this cause."

And for other and further relief.

Briefly stated the facts alleged and upon which the relief prayed for rests are these: That the property conveyed by the Equitable National Bank to James Callahan by the deed of March 28, 1905, was bought and paid for by Charles J. Philbin, who for convenience caused the title to be placed in the name of Callahan; that the said Charles J. Philbin paid the taxes on the property, collected and used the rents from the property, and exercised all rights consistent with the ownership of the same; that Callahan possessed merely a bare legal title to the property, and at no time claimed to own the property or disputed Charles J. Philbin's ownership to the same. The bill further alleged that the defendant, Patrick H. Philbin, by false representations made to Callahan secured the deed of July 20, 1908, and that, although the deed expressed a consideration of $2,000, no consideration in fact passed from the defendant to Charles J. Philbin or James Callahan for said conveyance; that Patrick H. Philbin at no time during the life of Charles J. Philbin laid

claim to the ownership of the property or disputed Charles J. Philbin's ownership to the same, it being distinctly understood and agreed between them that the real ownership of the property was in Charles J. Philbin; that up to the time of his death Charles J. Philbin paid the taxes on and assumed all the expenses connected with the property, received and used the rents from the same, and in fact assumed all obligations and enjoyed all the rights of ownership; that Patrick H. Philbin had nothing to do with the management of the property, bore none of the expenses connected with it, and received no rents or profits from it; that since the death of Charles J. Philbin, the defendant has laid claim to the ownership of the property, and although requested to do so, has refused to execute to the complainants a deed for the property.

The answer of the defendant denied all the material facts upon which the complainants relied to establish their case. It alleged that the "property was sold to the defendant by the Equitable National Bank of Baltimore and for convenience the defendant caused the deed from the Equitable National Bank of Baltimore to be executed to one James J. Callahan. The defendant denies that the entire or any part of the consideration for the purchase and conveyance of the said property was the property of Charles J. Philbin, and says that the entire consideration was the property of the defendant. The defendant admits that Charles J. Philbin collected the rents from said property, and paid the taxes thereon, but did so solely as the agent of the defendant, and at no time did he, the said Charles J. Philbin, hold himself out as the owner of said property against the defendant, who was the real owner of the said property and who always held himself out as such." It denied that the deed of July 20, 1908, was secured by fraudulent misrepresentations or bad faith, and alleged that from the date of the deed to the time of his death, Charles J. Philbin had control of the property as the *agent* of the defendant and not as *owner*. It admitted that

Charles J. Philbin paid the taxes and expenses incident to the property, but alleged that he "did so only as the agent of the said defendant, and that the said Charles J. Philbin did not enjoy any of the privileges consistent with the ownership of said property, and that his management of said property was merely as an agent. And the defendant further alleges that his interest in the said property did not consist merely of a bare legal title, but consisted in real and actual ownership."

The testimony adduced by the respective parties upon the issues of fact raised by the pleadings was taken in open Court. This method of taking the evidence affords the Chancellor the most favorable opportunity to pass upon the credibility of the witnesses and the value and weight of their testimony. The lower Court was of opinion that the leasehold property referred to in the proceedings was the property of Charles J. Philbin at the time of his death, notwithstanding the fact that the record title thereto stood in the name of the defendant, Patrick H. Philbin, and that said property, or the record title thereto should be transferred by the defendant to the complainants to be accounted for by them as part of the estate of Charles J. Philbin. This conclusion of the Court was given effect by its decree of April 19, 1916, from which the defendant has prosecuted this appeal.

There can be no doubt that the allegations of fact contained in the bill, if established by the evidence, are sufficient to entitle the plaintiffs to the relief prayed for. There can be no question as to the law. "The general principle is well settled that when the purchase price is paid by one person and the title is taken in the name of another a resulting trust arises in favor of the person paying the purchase money, and the holder of the legal title becomes a trustee for him." *Dixon* v. *Dixon,* 123 Md. 44; *Dorsey* v. *Clarke,* 4 H. & J. 551; *Johnson* v. *Johnson,* 96 Md. 144; *Johns* v. *Carroll,* 107 Md. 436.

There are, however, exceptions to this general rule, but there are no facts in the record to bring the case within any of the exceptions, and it must be governed by the general principle stated. The case, therefore, resolves itself into a mere question of fact: Did Charles J. Philbin purchase and pay for this property and cause the title thereto to be placed in the name of James Callahan? The lower Court decided that he did, and we concur in this conclusion. In the opinion of JUDGE DAWKINS, who heard the case in the lower Court, is contained a careful review and analysis of the testimony which we think fully supports the conclusion reached by him. We herein insert a portion of the opinion which deals with the facts: "This case resolves itself largely into believing one set of witnesses or the other. To reach a conclusion as to which to accept as more worthy of belief, we are compelled to be influenced very much by the circumstances surrounding the matter. Mrs. Philbin says she saw the money drawn by her husband from a building association to pay for the property, and that Charles after the house was bought exercised the fullest acts of ownership over it, paying the charges against and collecting the profits arising from it. There is no denial of this. There is no suggestion that an accounting of any sort was asked for or given. There is no testimony that the defendant did anything looking to control over the property, until after the death of Charles. Defendant says he may have paid for the property out of a large sum of money that he was accustomed to carry around in his pocket, especially when he made trips to New York. No time is given when these sums of money were in hand or whence they were obtained. The defendant further says that he kept his money in three banks, but declines to give the names of the banks. He also tells of a long past due sum of money that awaits his going to Washington to be paid to him, and speaks at the time of his strong box—being held at the hotel for a small claim against him.

"These facts with the further circumstances that he says the settlement was made with him without his real name being disclosed to the vendor and with the defendant's own statement that the only acts of ownership that he ever exercised was going to look at the roof once and 'it strikes' him that he collected some rent,—makes such a doubtful case of fact as should not be taken against the positive facts of the plaintiff's decedent already mentioned. Mr. Callahan says Charles told him he had put the property in his name and he executed a deed without getting a nickle. He had faith in both brothers. There is no denial of the testimony of Mr. Watson that the defendant when asked to give a deed to the administrators, made no claim of title to the house, but said he would sign the deed when a certain judgment was paid.

"Mr. McNally says he collected the ground rent from the deceased. Mr. Carroll collected rent for him. Mr. Shriver paid the rent to Charles and had Charles make the repairs. Mr. Brady was employed by Charles to buy the property and was paid for his services by Charles. True, Mr. Heimiller says he acted for Patrick, but Mr. Wolf who employed Mr. Heimiller to examine the title for him, though his recollection is hazy thinks that Patrick never employed him on any title matter, though he did employ him in some other matters."

As we understand the record the whole case of the defendant rests upon his own testimony. We do not consider it desirable, or necessary to review it or comment upon it. In those parts which concern the essential facts of the defense,—the purchase of the property and the payment of the consideration,—it is so unusual and improbable that it must be held to be wholly insufficient to impair the strength of the case made by the plaintiffs. The only fact in the case, which unexplained, would give color to the defendant's contention that Charles J. Philbin was his agent in the control of the property is the agreement of Nov. 17, 1913, between Patrick

H. Philbin, landlord, and Oscar J. Shriver, tenant. This agreement is under seal and is signed by the defendant and Shriver, and by Charles J. Philbin, agent. The agreement was signed in this manner through the advice of William H. Watson whose uncontradicted testimony as to its execution was as follows: "Q. Do you know anything about the execution of this deed to Mr. Shriver? A. I do. Q. Kindly state, if you know, how that came to be signed as it is? A. I advised it to be signed in the manner in which it was. Q. Why? A. Charles J. Philbin wanted to sign his own name, but I told him that the legal title was in the name of Patrick, and in case of distraint, or anything coming up in the future, it would be better to put it in the legal title. Q. That was the reason it was signed 'Patrick, by Charles as agent?' A. He virtually wrote it out and I witnessed it."

A motion was filed to dismiss the appeal upon the ground that the cost of printing the record was not paid by the appellant or his counsel within the time provided by Rule 34 of this Court. The record was in fact printed and before the Court when the case was called for argument. The case was argued by the counsel for the appellees, and a printed brief filed by him within six days thereafter as provided by Rule 36, section 2. It was said in *Havre de Grace* v. *Fletcher,* 112 Md. 562, that: "There is no provision in Rule 34 that an appeal shall be dismissed for non-compliance with the rule and no penalty of any character is provided for non-compliance." No delay in the hearing of the case was caused by the failure of the appellant to comply with the rule, and upon the authority of *Fletcher case, supra,* we have concluded to deny the motion to dismiss the appeal, and have decided the case upon its merits.

*Decree affirmed, with costs.*