ROSE FASMAN *v.* DAVID POTTASHNICK, ET AL.

[No. 80, October Term, 1946.]

106

Decided March 14, 1947.

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*R. Lewis Bainder* for the appellant.

*Abram C. Joseph,* with whom were *John W. McGrain* and *Samuel B. Rochkind* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit in equity was brought by Mrs. Rose Fasman, appellant, to establish an implied trust in three parcels of land recorded on the land records of Baltimore City in the name of her brother, Benjamin Rosen, deceased. The chancellor dismissed her bill of complaint, and she is now appealing from the decree.

Complainant, a widow, 61 years old, was born in Russia and immigrated to America more than 35 years ago. After her husband's death she resided with her son, Ben Fasman, a news photographer, at 200 Marcy Place, Bronx, New York. Her brother, also a native of Russia, came to New York about 32 years ago, and about 16 years ago moved to Baltimore. He died on March 13, 1946. While he is survived by only one descendant in this country, a granddaughter, Mrs. Miriam Miller, a resident of New York, it appears that when he came to this country, he left three sons and a daughter in Russia, and in recent years he has been unable to locate them. He left a will written in Yiddish on Friday, the eve of the Holy Sabbath, Sedrah Ekev, the 17th day of the month of Ab, in the year 5702. That day on the calendar was

July 31, 1942. At that time he owned a property at 1107 East Baltimore Street, where he lived and for several years ran a restaurant, and also three other houses at 607 West Franklin Street and 204 and 206 Lloyd Street. He bequeathed to his sister, Mrs. Fasman, $300 outright and also ordered his executors to pay her $10 weekly out of the income from his houses during the period of two years. He gave the residue of his estate to his three sons and one daughter, explicitly directing his executors to continue to search for them for the period of ten years after his death. His will was admitted to probate on April 18, 1946. Defendants in this case are his executors, David Pottashnick and Morris Smelkinson, and his granddaughter, and his supposed heirs and next of kin in Russia.

The properties upon which complainant seeks to impose a trust are improved by a number of houses known as (1) 614 West Franklin Street and 502 Pearl Street, (2) 204 and 206 Lloyd Street, and (3) 4321 to 4327 Park Heights Avenue. Complainant alleged in her bill that, although the properties were purchased by her brother and were recorded in his name alone, she contributed one-half of the cash payments, and it was understood that the purchases were for their mutual benefit. Her main witness was Mrs. Cecile Berkman, a young neighbor, who testified that Rosen could not write English, and that she wrote his letters for him as a personal favor. She then testified that early in 1943 she wrote a letter for him to his sister in New York stating that he was planning to buy the houses at West Franklin and Pearl Streets, but needed some money to complete the transaction, and that he wanted her to give him about $600; that later in 1943, when he was buying the houses on Lloyd Street, she wrote another letter for him asking his sister to contribute about $750; and that in 1945, when he was buying the houses on Park Heights Avenue, she wrote a third letter asking for $800. She further testified that each time Mrs. Fasman came to Baltimore and handed the cash to her brother. Complainant's son,

Ben, testified that he kept his mother's money for her in his savings account; that he translated the three letters into Yiddish and read them to his mother; and that he withdrew the sums requested and turned them over to her.

Implied trusts are divided into two classes: (1) resulting trusts, which arise upon the presumed intention of the parties, and (2) constructive trusts, which are independent of any such intention and are forced upon the conscience of the party by operation of law. It is one of the fundamental principles of equity that where property is purchased, and the legal title is taken in the name of one person, while the purchase price is paid by another, but not as a loan to the grantee, nor from any natural or moral obligation to provide for the grantee, a resulting trust arises by implication of law in favor of the person paying the purchase price, unless a different intention is shown. *Philbin v. Watson,* 129 Md. 497, 501, 99 A. 675; *Vogel v. Vogel,* 157 Md. 147, 153, 145 A. 370. Likewise, where a transfer of property is made to one person, and only a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise. *Johnson v. Johnson,* 96 Md. 144, 53 A. 792; 2 *Restatement, Trusts,* Sec. 454.

We agree that the evidence in this case fails to measure up to the standard required for the imposition of a resulting trust. We are unwilling to disturb the finding of the chancellor, who had the opportunity to see and her the witnesses and to observe their demeanor on the stand. It is true that resulting trusts and constructive trusts are not within the Statute of Frauds, and may be proved by parol evidence. *Beachey v. Heiple,* 130 Md. 683, 693, 101 A. 553; *Dillfelder v. Winterling,* 150 Md. 626, 638, 133 A. 825. But in a suit to establish a resulting trust in real estate, the complainant has the burden

of proof to establish the trust by plain, unequivocal and convincing evidence. *Cropper v. Lambertson*, 174 Md. 24, 197 A. 576. The court should view parol evidence in such a case with the greatest caution, for it impeaches an instrument solemnly executed according to law and recorded on the land records as an evidence of title. Any other rule would make titles to real estate insecure. *Kelley v. Kelley*, 178 Md. 389, 399, 13 A. 2d 529. We hold that the evidence necessary to establish a resulting trust in real estate must be so strong and convincing as to leave no reasonable doubt of the payment alleged and of other facts relied upon to establish the trust. *Faringer v. Ramsay*, 4 Md. Ch. 33; *Sands v. Church of Ascension and Prince of Peace*, 181 Md. 536, 540, 30 A. 2d 771. There is added force to this rule where the delay has been so long that the death of witnesses and the loss of evidence render it practically impossible to make a defense. *Streeter v. Gamble*, 298 Ill. 332, 131 N. E. 589, 23 A. L. R. 1485, 1489.

In the case now before us complainant and her brother knew how to read and write Yiddish, but not English. It seems strange that the brother sought the aid of a young neighbor, who was not employed by him, to write the alleged three letters in English over a span of several years, with the result that complainant's son had to translate them back from English to Yiddish. It also seems unusual that the young amanuensis was able to remember the facts and the amounts after the lapse of several years. Furthermore, complainant's son, acting as his mother's business adviser in New York, claimed that he made three withdrawals from his savings account and gave her the three sums; yet he did not produce any bank book, cancelled check, or any other record whatever. When he was questioned concerning the letters which he said his mother had received, he replied that he did not keep any of them, but considered them unimportant. We have noticed that the testimony of Mrs. Berkman and Ben Fasman to the effect that Mrs. Fasman gave Rosen about $2,150 does not correspond

with the allegation of the bill of complaint that she contributed one-half of the cash required for the purchases. For it appears from the records in the stipulation that the cash payments needed to supplement the purchase money mortgages tótalled $3,600; hence her share would have been $1,800.

Complainant produced three other witnesses, but they did not add material strength to the claim. (1) Mrs. Ray Leavitt, Mrs. Berkman's mother, who had worked in Rosen's restaurant as a cook for six months, testified that she had overheard Rosen ask Mrs. Fasman for advice about buying and selling houses; and that she had seen Rosen every day during the last six years of his life; yet she stated that it was not until his final illness two weeks before his death, when he proposed to marry her, that he made the remark that he was "in partners" with Mrs. Fasman. (2) Abraham Levin, a real estate dealer, testified that he had been authorized to sell the properties by both Rosen and Mrs. Fasman; but he admitted that he had no office, that he had hardly been able to write for several years on account of eye trouble, that he had never made it a practice to obtain written contracts with his clients, and that he had not found a single prospective purchaser for the properties. (3) Michael Auslander, a pipefitter, testified that he had been employed by both Rosen and Mrs. Fasman to collect rents from the properties; but he collected only during Rosen's last illness, and a check payable to the order of Mrs. Fasman, which he had received from one of the tenants, was dated April 21, 1946, more than a month after Rosen's death.

It also appears that complainant's actions during her brother's last illness were not such as to support the theory of a resulting trust. It was not until her brother became critically ill that she made vigorous efforts to persuade him to make a will leaving her one-fourth of his property. She believed he had never made a will, and she feared his children in Russia would inherit his estate. She tried in vain to get the co-operation of Rosen's

granddaughter. On March 6, 1946, the day Rosen entered the hospital, she wrote in desperation to the granddaughter: "Can you possibly come here immediately for one day because you have to sign papers? * * * Do not delay because, God forbid, he is passing away, and if you do not sign, everything will be lost. It will be a great loss. So much property will be lost." Mrs. Miller, however, was unable to come to Baltimore on account of illness in her family. We think complainant's efforts to persuade her brother while on his deathbed to make a will leaving her one-fourth of his property casts considerable doubt upon her claim for a one-half interest. This is especially true in view of the fact that she never claimed a one-half interest in the properties until after the probate of the will.

Finally, we hold that the evidence is not sufficient to establish a constructive trust. Equity imposes a constructive trust where a person holding title to property is subject to an equitable duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence, or mistake, or through a breach of fiduciary duty, or through the wrongful disposition of another's property. *Springer v. Springer,* 144 Md. 465, 125 A. 162; *Lipp v. Lipp,* 158 Md. 207, 148 A. 531; *O'Connor v. Estevez,* 182 Md. 541, 555, 35 A. 2d 148; *Trossbach v. Trossbach,* 185 Md. 47, 42 A. 2d 905. We find in this case no actual fraud, or any circumstance amounting to constructive fraud, or any facts and circumstances that produce a situation where it would be inequitable to allow Rosen's heirs or devisees to retain title to the properties in question. After Rosen's death, his granddaughter came to Baltimore to investigate his estate. She was accompanied by her husband, Dr. R. O. Miller, a New York physician, and her cousin, Eli Resnikoff, Assistant United States District Attorney for the Eastern District of New York. Resnikoff testified that when he met Mrs. Fasman and asked her about

the properties, she replied that she knew very little about them, as she lived in the Bronx, and came to Baltimore whenever her brother was sick. He further testified that she informed him that a lawyer called to see her brother while he was in the hospital and talked about the preparation of a will which would leave one-fourth of his property to her for taking care of him, and three-fourths to his granddaughter, but it was too late to make a will. It should not be overlooked that Rosen bequeathed to complainant $300 outright and $10 per week during the period of two years. This was an aggregate bequest of $1,340. It is conceivable that, even if she gave him some money for the purchase of his houses, he may have considered that she was sufficiently reimbursed by giving her board and lodging in Baltimore after her husband's death, and by making her the bequest.

As we have reached the conclusion that the evidence does not warrant the imposition of either a resulting or constructive trust, we affirm the decree dismissing the bill of complaint.

*Decree affirmed, with costs.*