SIEMIESZ *v.* AMEND, ᴇᴛ ᴀʟ.

[No. 166, September Term, 1964.]

*Decided February 5, 1965.*

*Motion for rehearing filed March 9, 1965, denied March 10, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Marion A. Figinski* for appellant.

*B. Conway Taylor, Jr.,* with whom were *Due, Whiteford, Taylor & Preston* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

Zofia Siemierz Amend, one of the appellees, was a joint tenant with her uncle, Feliks Siemiesz, appellant, of a residential fee simple property in Baltimore City at 3518 Frankford Avenue. Mrs. Amend and her husband, the other appellee, filed a bill in equity for sale of the property in lieu of partition, to which an answer and cross bill was filed by her uncle alleging his sole ownership of the property and seeking appropriate relief. An answer was filed to the cross bill. On June 2, 1964, after testimony had been taken in open court, the chancellor signed a decree dismissing the cross bill with prejudice and ordering sale of the property.

Mrs. Amend and appellant are Polish by birth, and she is the daughter of his brother. Mr. Siemiesz has been in this country since 1907, and has never married. Apparently, he has from time to time financially assisted members of his family abroad, and in 1958 he sent funds to enable his niece to come to this country. She arrived in February 1958. At this time, her uncle furnished additional funds and purchased clothes for his niece which she considered as gifts. In July of that year she obtained employment. It is to be noted that the niece understood no English when she arrived. However, the appellant spoke some English but an interpreter was used in the trial below for his testimony.

In August 1958, a contract to purchase the property in ques-

tion was entered into by Mrs. Amend and her uncle. The testimony shows that appellant relied upon the advice and counsel of an acquaintance, Mr. Pietruszewski, who is now deceased. The uncle wanted to purchase the house, but to accomplish this, it was necessary that another responsible and younger individual's obligation appear on the purchase money mortgage. In September, settlement for the house was made, when Mr. Pietruszewski discussed in Polish the details of the transaction. The record shows that appellant knew and understood that Mrs. Amend was a co-tenant of the property. The attorney for the Hamilton Federal Savings and Loan Association, mortgagee, testified as to his regular office practice of discussing the nature of tenancies with purchasers, and had noted in his file the presence of Mr. Pietruszewski. The purchase price was $14,500 which included the purchase mortgage of $9,600; the difference and settlement expenses, a little less than $5,500, were paid by appellant. Title was placed in their names as joint tenants, and both he and his niece executed the mortgage. The niece and appellant moved into the house. In December 1958 she married Charles Amend, and the three parties lived in the house as a family. The uncle made three lump sum payments on the mortgage totaling $4000, and the first five or six monthly payments of $100 each. The record indicates that regular monthly payments were also made by appellees as well as payments for maintenance, fuel, alterations and the like. The parties lived together in reasonable harmony until the latter part of 1963 or early 1964, when differences arose leading to this litigation.

On this appeal, the uncle claims that the lower court erred in ordering the property sold and holding that the niece was a joint tenant since her name was put in the deed by mistake or fraud. Thus, he contends that she holds title to an interest in the property as trustee for him, and there was a resulting or constructive trust in his favor. The court below found that no resulting or constructive trust existed. We agree.

The burden of proof rests heavily on one challenging the accuracy of an instrument of title to land. If this were not so, the reliance which the public necessarily puts upon land title instruments would be seriously disturbed. *Fasman v. Pottash-*

*nick,* 188 Md. 105, 51 A. 2d 664; *Kelley v. Kelley,* 178 Md. 389, 13 A. 2d 529. Implied trusts may be either resulting or constructive trusts. A resulting trust arises upon the presumed intention of the parties where the terms of the disposition or accompanying facts establish that beneficial interest is not to go with legal title. In a suit to establish a resulting trust in real estate, the complainant has the burden of proof to establish the trust by plain, unequivocal and convincing evidence. *Fasman v. Pottashnick, supra; Sands v. Church, etc.,* 181 Md. 536, 30 A. 2d 771. Parol evidence may be sufficient to establish such a trust but the court should view it with great caution. *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 129 A. 2d 93.

In the case now before us, there is little evidence of any consistent nature which would justify the imposition of a resulting trust. The testimony shows that appellant could not get a mortgage to finance the acquisition of the property without the personal obligation of his niece. Further, appellant knew from the beginning that his niece was on the deed to the property. The attorney consummating the transaction testified that his regular office practice was to confer with the parties as to the manner in which title would be taken. His file disclosed the presence of Mr. Pietruszewski, whose advice appellant relied upon, and who was known to the uncle for a number of years before the niece arrived in the United States. The niece testified that the nature of title holding was explained in Polish by Mr. Pietruszewski at the settlement, which was never denied by the uncle; nor did he contest the testimony of Mr. Amend that the uncle told him around the time of his marriage to the niece that the house was in her name. With respect to the financial aspects of the mortgage payments, it is clear that the uncle made the initial down payment, some lump sum payments, and several monthly payments. However, the niece also made monthly payments on the mortgage, made improvements to the property, and provided meals and other household requirements for her uncle. We find that the evidence presented was not strong and convincing enough to establish a resulting trust.

Finally, we hold that the evidence was not sufficient to establish a constructive trust. Equity creates such a trust where a person holding title to a property is subject to an equitable

duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it. Such a trust may arise because the property was acquired through duress, fraud, undue influence or mistake, or through a breach of fiduciary duty, or through wrongful disposition of another's property. *Carter v. Abramo*, 201 Md. 339, 93 A. 2d 546; *Fasman v. Pottashnick, supra; O'Connor v. Estevez,* 182 Md. 541, 35 A. 2d 148; *Lipp v. Lipp,* 158 Md. 207, 148 Atl. 531. There is no evidence here of any misrepresentation by the niece. The appellant suggests that Mrs. Amend had some sort of control or domination over her uncle. However, we find no evidence in support of this contention and we must not overlook the court's finding below. It specifically found no evidence of any misrepresentation made by the niece. The court went on to say:

> "She no doubt was not in [a] very good position to make any representation because she could not speak very good English at the time this transaction occurred, whereas I think the weight of the evidence indicates that the Cross Complainant can understand English, and perhaps even speak it reasonably well, and I would think a man who has been here since 1907 to the present time, and who was able to accumulate and save $15,000, would very likely be able to have some acquaintance with the English language. It is hard for the Court to believe otherwise. The Court did notice in several instances the witness was able to answer without the assistance of the Interpreter, so that I think on the whole matter the Cross Complainant was in much better position to understand the situation and protect himself than was Mrs. Amend at the time."

We have held in the past that in matters of this sort, the fact findings of the chancellor, who had the opportunity of viewing the witnesses and forming opinions of their credibility, are entitled to great weight. *Tiemann v. Welsh,* 191 Md. 1, 59 A. 2d 628.

As we have reached the conclusion that the evidence did not warrant the imposition of either a resulting or constructive

trust, we must affirm the decree dismissing the cross bill of complaint and ordering the property sold in lieu of partition.

*Decree affirmed, with costs.*