## LACEY ET AL. *v.* VAN ROYEN

[No. 437, September Term, 1969.]

*Decided July 10, 1970.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*G. Vann Canada, Jr.*, with whom were *Shaffer, McKeever & Fitzpatrick* on the brief, for appellants.

*Joseph A. Mattingly* for appellee.

SMITH, J., delivered the opinion of the Court.

In this case it is contended that a trial judge erred in concluding that a conveyance was fraudulent as to creditors, the defense, among others, being that actual title was in a mother-in-law and that only bare legal title was in the son-in-law alleged to have made the fraudulent conveyance. We shall affirm the action of the chancellor.

Appellants Robert H. Lacey, Jr. (Lacey) and Marianne K. Lacey are husband and wife. Mrs. Lacey is the daughter of appellant Rose F. Kelly. In 1957 a house and a lot in a subdivision known as "Springfield" in Montgomery County were conveyed to Lacey, his wife, and Mrs. Kelly as joint tenants. The contract of purchase was in the name of Mrs. Kelly alone. Purchase price was $36,477.00. At the time of settlement Mrs. Kelly paid $12,644.70 to County Title Company, Inc., which apparently handled the settlement. She and Mr. and Mrs. Lacey at the same time executed a purchase money deed of trust to secure repayment of a loan of $25,000.00 from American Security and Trust Company. Interest rate on that loan was 4½ percent.

The home was occupied by Mr. and Mrs. Lacey, Mrs. Kelly and the Lacey children, of whom there were nine at the time of trial. Mrs. Kelly testified that she paid with her own funds all of the original down payment. In response to a question as to who made the payments under the deed of trust from early 1957 through early 1967 she said:

> "Well, sometimes they were made by Mr. Lacey and sometimes they were made by me. If I was making all the other payments some months and he being the father and raising a family and what-not, I assumed a man likes to have some dignity and I wasn't charging rent, I let him make a payment."

She claimed to have made the majority of payments and

answered in the affirmative when asked if Lacey made more than ten. She also claimed to have paid the utility bills and the maintenance expenses of the property and said, "* * * I never gave them any indication that the house was theirs or going to be theirs or anything." Her explanation of Lacey's name on the deed was, "At that time it was because he was employed at American Security and Trust Company and we were looking for a mortgage at a low interest rate and that was the only way we could obtain it, by having his name on it." Mrs. Kelly's testimony on the matter of title was remarkably brief.

On December 27, 1965, appellee, Irene Fetty Van Royen, gave Lacey the sum of $15,000.00 "to invest in a company of which he was a stockholder and president, the 1707 Management and Investment Company." In the spring of 1966 she was not satisfied and consulted an attorney. Suit was entered against Lacey and the corporation. A judgment was entered in favor of Mrs. Van Royen against them on July 14, 1967.

On July 25, 1966, the same day Mrs. Van Royen filed suit, Mr. and Mrs. Lacey and Mrs. Kelly executed a second deed of trust on this land to secure repayment of a loan in the amount of $35,000.00 from Bank of Commerce in Washington. It appears plain from the testimony that this was the debt of Lacey.

On November 25, 1966, American Security and Trust Company filed foreclosure action relative to its deed of trust, the affidavit showing a principal balance of $14,-363.29 then due including interest to June 14, 1966.

On January 7, 1967, Mr. and Mrs. Lacey and Mrs. Kelly executed a deed to appellant Robert A. Hickey, "Trustee for the sole purpose of reconveyance", and he in turn executed deed to Mrs. Lacey and Mrs. Kelly as joint tenants. Hickey, an attorney with the Department of Justice, is also a son-in-law of Mrs. Kelly. He testified that the title search he had done showed the pendency of the Van Royen law suit at the time the deeds were executed.

On January 7, 1967, Mrs. Kelly and Mrs. Lacey also executed a deed of trust to secure a loan in the amount of $20,000.00 from Enterprise Federal Savings and Loan Association. The Bank of Commerce by then had been merged with National Savings and Trust Company. Its deed of trust was released to secure priority of the Enterprise loan. A new second deed of trust for the benefit of National Savings and Trust Company was then executed in which Mr. Lacey joined with his wife and mother-in-law. The Enterprise loan was in the amount of $20,000.00 which was said to have been approximately $3,800.00 in excess of the sum needed to pay off American Security and Trust Company. That sum was deposited in an account at the Bank of Bethesda in the name of Mrs. Kelly and Mrs. Lacey and used for living expenses of the parties.

On January 25, 1967, permission was granted to the substituted trustee for American Security and Trust Company to dismiss the foreclosure action "with prejudice".

Lacey conceded that he was in serious financial difficulties "in May, June and July of 1966" and that this situation continued up to the date of trial. He admitted he did not have sufficient assets to pay his debts.

The chancellor (Pugh, J.), after hearing all of the evidence, was "of the opinion that the evidence [disclosed] sufficient grounds to justify setting aside the conveyance under either Section 4 or Section 7 of Article 39B of the Annotated Code of Maryland." Section 4 provides in pertinent part:

> "Every conveyance made * * * by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made * * * without a fair consideration."

Section 7 provides:

> "Every conveyance made * * * with actual intent, as distinguished from intent presumed

in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

The appellants mount their defense on two grounds. They claim Lacey was seized of no real interest in the property, but was merely a trustee of a resulting trust in favor of his mother-in-law, Mrs. Kelly. If they prove unsuccessful on that, then they contend that the chancellor erred in finding Lacey to be insolvent within the purview of Code (1965 Repl. Vol.), Art. 39B, § 2(1) which states:

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

The chancellor in reaching his decision said:

"Following the rule of Sines et al vs Shipes et al, 192 Md. 139 [63 A. 2d 748 (1949)], which stated that family members need not make equal payments in order to share equally in the property, the Court feels that the defendant, Robert Lacey, held more than a bare legal title and was thus capable of making a fraudulent transfer of the subject property."

In *Sines*, cited by Judge Pugh, the Court held that there was a resulting trust in favor of certain brothers and sisters, notwithstanding their unequal contribution to the fund from which purchases were made. The appellants draw strength and sustenance from a portion of the opinion in that case in which Judge (later Chief Judge) Markell quoted from *Fasman v. Pottashnick*, 188 Md. 105, 109, 51 A. 2d 664 (1947), saying:

" 'It is one of the fundamental principles of equity that where property is purchased, and the legal title is taken in the name of one person, while the purchase price is paid by another, but

not as a loan to the grantee, nor from any natural or moral obligation to provide for the grantee, a resulting trust arises by implication of law in favor of the person paying the purchase price, unless a different intention is shown. *Philbin v. Watson,* 129 Md. 497, 501, 99 A. 675; *Vogel v. Vogel,* 157 Md. 147, 153, 145 A. 370. Likewise, where a transfer of property is made to one person, and only a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise. *Johnson v. Johnson,* 96 Md. 144, 53 A. 792; 2 *Restatement, Trusts,* sec. 454.' " *Id.* at 153 of 192 Md.

They claim that this is authority for the proposition that the party who pays the purchase price for property but places title in the name of another is the real equitable owner of that property by resulting trust.

The burden of proof is on the party seeking to establish the resulting trust, in this instance upon Mrs. Kelly. This can only be done by evidence showing a clear intention of the trust. *Mountford v. Mountford,* 181 Md. 212, 219, 29 A. 2d 258 (1942), and cases there cited.

In *Powell v. Mackenzie,* 137 Md. 266, 112 A. 290 (1920), Judge Offutt said for our predecessors:

"The rule that where one person takes the title to property, which is paid for by another, in the absence of any facts explanatory of such circumstance, a resulting trust arises in favor of the person supplying the purchase money, is settled beyond question in this State (*Dixon v. Dixon,* 123 Md. [44,] 55 [, 90 A. 846 (1914)]), but the exception to this rule, that where the person supplying the purchase money is under a natural, moral or legal obligation to provide

for the person taking the title, the purchase is to be considered as an advancement or a settlement as the case may be, is equally well settled and quite as generally recognized. The cases illustrating the application of these principles are collected and analyzed in the case of *Dixon v. Dixon, supra,* in which Judge Burke, speaking for the court, says, citing 4 *Kent,* 306: 'If the person in whose name the conveyance of property is taken by one for whom the party paying the purchase money is under a natural or moral obligation to provide, no equitable presumption of trust arises from the fact of the payment of the money, but on the contrary the transaction will be regarded, *prima facie,* as an advancement for the benefit of the nominee. In that case, therefore, it will be for the party who seeks to establish a trust in behalf of the payer of the purchase money to displace by sufficient evidence the presumption that exists in favor of the legal title.' * * *

 * * *

"This presumption is one of fact and not of law and may therefore be rebutted by proof showing a contrary intention on the part of the purchaser. But the evidence of such an intent should be substantial and convincing, for the 'principle of law that a purchase is presumed *prima facie* to be an advancement is not to be frittered away by mere refinements.' *Finch v. Finch,* 15 Ves. 43. And where such an intention is sought to be drawn from declarations of the nominal purchaser the 'declarations must be direct and certain, and where possible should be corroborated by other facts and circumstances; for courts will not act upon mere declarations if they are conflicting, vague or inconsistent with themselves.' 1 *Perry, Trusts,* Sec. 147." *Id.* at 270-71.

Lacey and Mrs. Kelly do not really take issue with the above propositions of law, but say "there is no moral or legal obligation on [Mrs. Kelly] to provide for [Lacey], who is her son-in-law" and from that conclude that a resulting trust is established. Restatement (Second), *Trusts* § 442 (1959), states:

"Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child *or other natural object of bounty* of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the tranferee should not have the beneficial interest in the property." (emphasis supplied)

The comment under § 442 states in relevant part:

"*a. To what relatives rule is applicable.* The application of the rule stated in this Section is not determined by the closeness of the relationship or the extent of natural affection between the payor and transferee. It is rather a question of whether the transferee stands in such a relationship to the payor that it is probable that the payor intends to make a gift to the transferee. It is inferred that he does intend to make a gift if the transferee is by virtue of the relationship a natural object of his bounty.

"The rule stated in this Section is applicable where the payor and transferee respectively are in the relation of husband and wife; father and child; mother and child; father-in-law and son-in-law; grandparent and grandchild. It applies to the relation of parent and child although the child is an illegitimate or an adopted child. It is immaterial that the child is an adult. It applies also where the payor stands in loco parentis to the transferee; that is, where the payor

whether or not related to the transferee has assumed to act in the place of a parent of the transferee.

"It does not apply where the payor and transfere respectively are wife and husband, or child and parent. It does not apply where the payor does not stand in loco parentis to the transferee merely because the payor and transferee respectively are brothers and sisters, uncle or aunt and nephew or niece.

"It applies where the payor is a man and is engaged to be married to the transferee, but not where the transferee is already married to another person. It does not apply to unmarried persons unlawfully cohabiting.

"*b. Effect of the rule.* The fact that the transferee is a wife, child or other natural object of bounty of the payor is more than merely a circumstance tending to rebut the inference of a resulting trust. It is of itself a circumstance sufficient to raise an inference that a gift was intended, and the burden is upon the payor seeking to enforce a resulting trust to prove that he did not intend to make a gift to the transferee. See § 443."

*Cf. Tiemann v. Welsh,* 191 Md. 1, 6, 59 A. 2d 628 (1948).

Lacey was a natural object of the bounty of his mother-in-law. The chancellor might well have concluded that the plan of the mother-in-law was to vest in the survivor of herself, her daughter and Lacey title to the home for the purpose of providing a home for her grandchildren.

The contention of Lacey and Mrs. Kelly relative to resulting trusts must fail for another reason. The authorities are clear that the transaction is to be judged as of its date, and not upon the basis of facts occurring subsequent to that date. For instance, in *Porter v. Porter,* 168 Md. 287, 177 A. 460 (1935), Judge Shehan said for the Court:

> "A resulting trust can only be predicated upon facts and circumstances prior to or at the time of the conveyance. This court has said: 'Subsequent acts or declarations of the purchaser, or any other matter arising *ex post facto,* cannot be admitted for the purpose, although they may be of the most unequivocal and conclusive description.' *Johnson v. Johnson,* 96 Md. 144, 148, 53 A. 792, 794." *Id.* at 294.

It is true that Mrs. Kelly made the down payment, but to say that she paid all of the purchase price other than a few mortgage payments would be erroneous since the purchase money deed of trust was signed by all three of the individuals in whom title was vested and all three of them became obligated upon the note, payment of which was secured by the deed of trust. Therefore, all three of those individuals contributed substantially to the purchase price.

This case is similar in many regards to *Siemiesz v. Amend,* 237 Md. 438, 206 A. 2d 723 (1965), where this Court affirmed the chancellor's finding that no resulting trust had been established. A man desired to purchase real estate. He was unable to obtain financing. He and his niece took title to the property as joint tenants. With her name involved financing could be obtained. The purchase price was $14,500.00, including a purchase money mortgage of $9,600.00. The difference and settlement expenses, a little less than $5,500.00, were paid by the uncle. The uncle made three lump sum payments on the mortgage totalling $4,000.00 and the first five or six monthly payments of $100.00 each. The niece made monthly payments toward the mortgage as well as payments for fuel, maintenance and alterations. The parties disagreed. The niece asked that there be a sale in lieu of partition. The uncle filed a cross-bill claiming that he owned the property solely. This Court affirmed, stating that the evidence presented was not strong and convincing enough to establish a resulting trust and "the fact findings of the chan-

cellor, who had the opportunity of viewing the witnesses and forming opinions of their credibility, are entitled to great weight." The only significant difference between that case and this case is that there one party asserted that no resulting trust was intended while here apparently both Lacey and Mrs. Kelly contend that it was the intent to create a resulting trust. Mrs. Lacey did not testify. Not to be overlooked is the fact that Lacey here has reason, the avoidance of his creditors and the protection of his family, to contend that a resulting trust was intended.

Judge Pugh had the opportunity of observing the demeanor of the witnesses and forming an opinion as to their credibility. He might well have taken into consideration the language used by Judge Marbury for the Court in *Battle v. Allen,* 250 Md. 672, 245 A. 2d 590 (1968), where he said:

> "Since the law creates a strong presumption in favor of the legal title as evidenced by a deed, *Mountford v. Mountford,* 181 Md. 212, 29 A.2d 258, a person who attempts to establish a resulting trust has the burden of proving such trust by plain, unequivocal, and convincing evidence. *Siemiesz v. Amend, supra; Fasman v. Pottashnick,* 188 Md. 105, 51 A. 2d 664. Indeed, this Court has stated that the evidence must be so clear and strong as to remove every reasonable doubt as to the existence of the trust. *Gray v. Harriet Lane Home,* 192 Md. 251, 64 A. 2d 102; *Sands v. Church, Etc.,* 181 Md. 536, 30 A. 2d 771. Parol evidence may be sufficient to establish a resulting trust, but the court will view it with great caution because it impeaches a document executed according to law and recorded as evidence of title. Any other rule would disturb the reliance which the public places upon land title instruments. *Siemiesz v. Amend, supra; Fitch v. Double 'U' Sales Corp.,* 212 Md. 324, 129 A. 2d 93." *Id.* at 675-76.

There was a sound basis for the conclusion of the chancellor that a resulting trust had not been established and, therefore, that something more than bare legal title was in Lacey.

Mrs. Kelly and Mr. and Mrs. Lacey contend that the chancellor erred in finding Lacey insolvent. Insolvency is a necessary element to striking down a deed under § 4 of the Uniform Fraudulent Conveyance Act. It is not a necessary element, however, to striking down a deed under § 7. Mrs. Kelly and Mr. and Mrs. Lacey apparently proceed upon the premise that the burden was upon Mrs. Van Royen to establish Lacey's insolvency. Under the facts here existing such is not the case.

In *Savings Bank v. Sauble,* 183 Md. 628, 39 A. 2d 862 (1944), Judge Delaplaine said for the Court:

> "It has been an ancient policy of the common law to protect the rights of creditors against all dispositions of property which result in fraud. In 1570 the Parliament enacted the Statute of 13 Elizabeth ch. 5, which declared void any conveyance made with intent 'to delay, hinder or defraud creditors,' but provided that the act did not extend to any estate or interest conveyed 'upon good consideration and *bona fide*' to any person without notice of the fraud. 1 *Alexander's British Statutes,* Coe's Edition, 499-545." *Id.* at 630.

Then the opinion further stated with reference to §§ 4 and 10 of the Uniform Act:

> "The Uniform Act is declaratory of the common law and is practically a restatement of the Statute of 13 Elizabeth." *Id.* at 632. (citing authorities)

In *Arthur v. Morrow Brothers,* 131 Md. 59, 101 A. 777 (1917), Chief Judge Boyd said for our predecessors:

> "The *Statute of 13th Elizabeth,* Chapter 5, has frequently been before this Court. A voluntary

conveyance is *prima facie* invalid as against existing creditors of the grantor who has no sufficient means to pay his debts, independent of that conveyed, without regard to his actual intent or to that of the grantee. *Christopher v. Christopher*, 64 Md. 583, 588; *Cone v. Cross*, 72 Md. 102, 105. *The burden is on the party claiming under the conveyance to prove that a debtor had sufficient property with which to pay his debts, exclusively of that conveyed away." Id.* at 68. (emphasis added)

See also *Morrow v. Arthur*, 134 Md. 182, 194, 106 A. 356 (1919), involving the same parties in which Chief Judge Boyd again stated the rule.

An equally positive statement of the rule is found in *Goodman v. Wineland*, 61 Md. 449 (1884), where our predecessors said:

"The bill in this case was brought to set aside a deed and bill of sale made by Marx Wineland to his wife, and to subject the property conveyed, to the payment of debts due from Wineland to Goodman, the complainant, at the time of their execution, upon the ground that said conveyances, being voluntary and without consideration, and made when Wineland was so indebted, their legal effect, without charging they were made with such actual intent, was to delay, hinder and defraud his creditors.

\* \* \*

"The motive or purpose with which a voluntary transfer of property is made by a party indebted at the time is not material. The legal effect of such a conveyance is, that, without reference to the actual intent of the debtor, it is *prima facie* in fraud of creditors. This presumption of law may be repelled by proving, that the grantor, at the time of the gift, was possessed of other means amply sufficient to pay all his

debts, and the *onus* of so proving is upon those seeking to uphold the gift. *Baxter v. Sewell,* 3 Md. 334; *Williams v. Banks,* 11 Md. 198; *Whedbee v. Stewart,* 40 Md. 414." *Id.* at 451.

See also *Birely v. Staley,* 5 G. & J. 432, 455 (1833).

In this case Lacey admits he was in serious financial difficulty and did not have sufficient assets to pay his debts as they matured. A judgment was entered against him which he did not pay. A conveyance prepared through the good offices of his brother-in-law vested title to property in which Lacey had an interest in his wife and mother-in-law. It is admitted that no money changed hands and there was no other consideration, except possibly love and affection. Accordingly, it is quite clear that under the authorities the burden was indeed on the appellants to show that the conveyance did not render Lacey insolvent. That this theory of the law is in accordance with holdings elsewhere may be gleaned from 37 Am.Jur.2d *Fraudulent Conveyances* § 218 (1968), where it is said:

"Where a conveyance is sought to be vacated on the ground that it was voluntary, the burden is upon the complainant to show that his debt antedated the conveyance attacked, but the burden of proving the solvency of the debtor, that is, that he retained sufficient means to pay his debts after the voluntary conveyance, is on the transferee."

There was no proof presented to show solvency upon the part of Lacey. Therefore, this contention of the parties must fall. Moreover, curiously enough, the parties have not seen fit to contest on appeal the finding of the chancellor that the transaction came within the purview of § 7 as well as § 4. Accordingly, had we decided the contentions otherwise under § 4, the deed would have been set aside (and properly so) under § 7.

*Decree affirmed; appellants to pay the costs.*