The UNITED STATES of
America, Appellant,

v.

The DISTRICT OF COLUMBIA; and
The Department of General Services,
District of Columbia, Appellees.

No. 84–2329.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1986.

Decided April 14, 1986.

Kathleen P. Dewey, Dept. of Justice (F. Henry Habicht II, Asst. Atty. Gen., Washington, D.C., J. Frederick Motz, U.S. Atty., Baltimore, Md., David C. Shilton and Pamela S. West, Dept. of Justice, Washington, D.C., Catherine C. Blake, U.S. Atty., Baltimore, Md., on brief), for appellant.

Lutz Alexander Prager, Asst. Corp. Counsel (John H. Suda, Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, Appellate Div., Roberta Gross, Asst. Corp. Counsel, Washington, D.C., on brief), for appellees.

Before WINTER, Chief Judge, and SPROUSE and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

This case involves a dispute between the United States and the District of Columbia ("the District") over the possession and use of certain property located in Prince George's County, Maryland. The property is titled in the name of the United States but currently possessed by the District. The United States sued for ejectment. Applying Maryland law, the district court, 596 F.Supp. 725, found that the District had an equitable interest in the property and so granted summary judgment for the District. The United States appeals, arguing that federal law should control the resolution of the case. Finding other grounds for upholding the district court's judgment, we affirm.

I

In 1929, Congress authorized the District of Columbia Commissioners to acquire a site and to construct a children's tuberculosis sanatorium. Act of Mar. 1, 1929, ch. 422, 45 Stat. 1425. The next year, Congress amended the Act and added the following provision:

That if the land proposed to be acquired as a site for the said sanatorium is without the District of Columbia the title to said property shall be taken directly to and in the name of the United States....

Act of Apr. 18, 1930, ch. 186, 46 Stat. 218. Later that year, two parcels of land in Prince George's County, Maryland, were purchased. Together, they are known as the Glenn Dale property. Both deeds transferred title to the United States in fee simple absolute. Neither deed mentioned the District of Columbia, either as a party or as a holder of any interest in the property.

The District constructed the facility for the sanatorium and commenced operations. In the late 1960's, because of medical advances in the treatment and care of tuberculosis, the Glenn Dale facility began to be used less for the treatment of tuberculosis and more for the treatment of other chronic diseases. By 1972, the last tubercular child was treated at Glenn Dale. The facility was used as a general hospital until 1981, when continued operations were found to be economically unfeasible and the facility was closed.

Thereafter, both parties claimed the right to control the Glenn Dale property. The General Services Administration (GSA) claimed that the District had a right to use the property only so long as it was used for a hospital and that GSA could dispose of the property under the Federal Property and Administrative Services Act of 1949, ch. 288, 63 Stat. 377 (FPASA), since hospital operations had ceased. The District published notice of intent to lease the site in November 1982, but attempts to lease the property were suspended pending discussions between the parties. When discussions failed and the District again published notice of intent to lease, the United States brought this action on behalf of GSA in the United States District Court for the District of Maryland. The United States sought to eject the District and enjoin its attempts to lease the property.

On the parties' cross motions for summary judgment, the district court granted

judgment for the District; its opinion is reported as *United States v. District of Columbia*, 596 F.Supp. 725 (D.Md.1984). The court held that the District was not a federal agency under the FPASA so that the FPASA would not apply. Applying the Maryland law of purchase money resulting trusts, the court found that the District held the equitable interest in the property and was entitled to possess and use the property until Congress legislates to the contrary.

## II

On appeal, the United States argues that federal law controls the resolution of this dispute and thus the district court erred in applying Maryland law and determining equitable title to the property. We find that the Acts of Congress are sufficiently clear that we need not resort to Maryland law to determine that the District has the right to possess and use the Glenn Dale property.

The United States claims the right to have the District ejected from the property. The United States holds fee simple absolute title to the Glenn Dale property pursuant to the 1930 Act. The United States asserts that it is entitled to possession: allegedly, the District had the right to use the property only so long as it was used for a hospital, and the District forfeited that right by discontinuing hospital operations in 1981. We find no basis for such a condition. Nothing in the 1929 or 1930 Acts indicates any such condition or potential forfeiture, and we refuse to create limitations that Congress did not see fit to impose.

On the contrary, Congress specifically authorized the District of Columbia Commissioners to acquire the site and to construct a facility for use as a children's tuberculosis sanatorium. Congress subsequently provided for the District to control the facility:

The following hospital and sanatoria, on or after July 1, 1937, shall be under the direction and control of the Department of Human Services of the District of Columbia and subject to the supervision of the Mayor of the District of Columbia: Tuberculosis Sanatoria....

D.C.Code § 6–116 (1981) (originally enacted as Act of June 29, 1937, ch. 403, § 1, 50 Stat. 371, 376). The District has continuously exercised control over the property from the time of its acquisition to the present. Finally, Congress has provided:

The Mayor of the District of Columbia is authorized and empowered within his discretion *to rent any building or land* belonging to the District of Columbia or *under the jurisdiction of the Mayor*, or any available space therein, whenever such building or land, or space therein, is not then required for the purpose for which it was acquired....

D.C.Code § 1–337(c) (1981) (emphasis added) (originally enacted as Act of Dec. 20, 1944, ch. 611, § 1(c), 58 Stat. 819, 821).

The United States correctly observes that this statute applies to property under the control of the District, but it argues that it does not apply to property controlled by the District but owned by the United States. This argument is refuted by the clear language of the statute itself. Section 1–337(c) has no language stating, or even suggesting, that property owned by the United States is excluded. Had Congress wished to limit the scope of the power to property *owned* by the District, it needed to use only the phrase "belonging to the District of Columbia" and could have omitted the phrase "under the jurisdiction of the Mayor." We refuse to assume that Congress is ignorant of the distinction in meaning between these two phrases and to ascribe to the statute a meaning inconsistent with its plain language.

Section 1–337(c) is directly applicable here. The District has jurisdiction over the tuberculosis sanatorium. It ceased operating a hospital at the facility when it was found that it was not economically feasible to make the renovations necessary to continue operations. Thus, Glenn Dale was no longer required as a medical facility, the purpose for which it was acquired. Thereafter, when the District sought to lease the property rather than let it sit idle and dete-

riorate, it was doing no more than what was already authorized by Congress.

In conclusion, looking at these statutes as a whole, we find that Congress intended for the District to possess and use the property until it legislated to the contrary. Further, § 1–337(c) governs the present dispute and authorizes the District's attempts to lease the property. For these reasons, the judgment of the district court is

AFFIRMED.