859 F.2d 151
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barbara Jean THORNTON, a/k/a Barbara J. Cook, Marie
Saunders, Defendants- Appellants.
 No. 87-2171.
 United States Court of Appeals, Fourth Circuit.
 Argued May 4, 1988.
Decided Sept. 14, 1988.
 
 Jacob Sheeskin (Sheeskin, Hillman & Lazar, P.C. on brief) for appellants.
 Janet A. Bradley (William S. Rose, Jr., Assistant Attorney General, Gary R. Allen, David English Carmack, Tax Division, Department of Justice, Breckinridge L. Willcox, United States Attorney on brief) for appellee.
 Before JAMES DICKSON PHILLIPS, MURNAGHAN, and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Benjamin Thornton owes the federal government $804,428.54 in unpaid gambling excise taxes, individual income taxes, and penalties and interest. Barbara Jean Thornton, Benjamin's wife, and Marie Saunders, Benjamin's sister, are record owners of 4321 Ranger Avenue, Temple Hills, Maryland. The government asserted that Barbara Jean and Saunders were nominees of Benjamin and on December 9, 1983 filed with the Clerk of the Circuit Court for Prince George's County, Maryland (the county where the property is located) a notice of federal tax lien against the property.[1] The government then sued Barbara Jean and Saunders under 26 U.S.C. section 7403 to foreclose the tax lien. It asked the court to declare the validity of the lien, foreclose it, order a sale and distribute the proceeds to the United States.
 
 
 2
 The district court did exactly that. It declared that Barbara Jean and Saunders held the Ranger Avenue property as nominees for Benjamin, it foreclosed the government's lien and ordered the house sold. All proceeds were ordered paid to the government except $7500 to be paid to Saunders. The district court also ordered forfeited to the government a motorbike and two automobiles that he found were owned by Benjamin.
 
 
 3
 The government's complaint did not seek foreclosure on property other than the Ranger Avenue real estate. Evidently, the district court sua sponte added the three vehicles to its judgment. Appellants, so far as the record appears, did not object at the district court level to the forfeiture of those vehicles. No argument was made before this Court either on brief or in oral argument questioning the correctness of the portion of the judgment regarding the vehicles. All appellate argument has been directed exclusively toward the Ranger Avenue property. We, therefore, affirm that portion of the district court's judgment that relates to the three vehicles.
 
 
 4
 Among the parties' stipulations were (1) that the Ranger Avenue property was purchased in 1971 for $48,000, (2) that Saunders paid $7500 as a down payment, (3) that Barbara Jean paid $7500 as a down payment of which at least $2,000 was provided by Benjamin, (4) that a mortgage for the balance was obtained by Barbara Jean and Saunders, (5) that the mortgage was paid by monthly payments until 1981, at which time it was paid in full by a single payment.
 
 
 5
 The issues at trial included the source of the remaining $5500 of Barbara Jean's down payment and the source of the mortgage payments. The trial court, sitting without a jury, found Benjamin to be the source. It accepted the stipulation that Marie contributed $7500 to the down payment but found that she contributed no money after that.[2]
 
 
 6
 Appellants preemptively argue that the government's action is time barred and point to 26 U.S.C. section 6901 as the statute so limiting the government's action. Section 6901 deals generally with the transferees of property of taxpayers and provides a means for the government to collect taxes from a transferee of an indebted taxpayer. Section 6901 does not create the transferee's liability, it only provides a means (largely administrative) of enforcing that liability. Phillips v. Commissioner, 283 U.S. 589, 602 (1931) (construing Sec. 280(a)(1) of the Revenue Act of 1926, 44 Stat. 61, predecessor of 26 U.S.C. Sec. 6901(a)(1)).
 
 
 7
 Section 6901 provides a period of limitations for assessment of the liability of an initial transferee of "within 1 year after the expiration of the period of limitation for assessment against the transferor." 26 U.S.C. Sec. 6901(c)(1). Appellants argue that once the government made an assessment against Benjamin in 1973 for the taxes involved in the present action, the government had one year to make assessments against Benjamin's transferees. The government did not take action against Barbara Jean and Saunders within one year, and, so the argument goes, it is thereby barred from proceeding against them.[3]
 
 
 8
 The government counters with two arguments. First, is that appellants as nominees are not "transferees" so that section 6901 does not apply. Second, is that even if section 6901 applies, the action is timely. The district court appears to have accepted the first argument. We agree, making it unnecessary to resolve the question of the effect of the statute.
 
 
 9
 The government has not alleged that Barbara Jean and Saunders are transferees. It has alleged that they are nominees of Benjamin. The government would have proceeded against Barbara Jean and Saunders as transferees if it, for instance, had sought to prove that Benjamin had transferred money or securities to Barbara Jean and Saunders and that they had then proceeded to use the transferred property to purchase 4321 Ranger Avenue. That would involve a fraudulent conveyance theory not considered below. The government unsuccessfully attempted to amend its pleadings to include such a count of fraudulent conveyance under Md.Com.Law Code Ann. Sec. 15-207. The attempt was made in an Amendment to Proposed Pretrial Order filed March 19, 1987. Defendants objected to the timeliness of the count. The district court, in a ruling made while deciding preliminary matters immediately prior to trial, did not permit the amendment. The government has not appealed that ruling, therefore its case below, and here as well, rises and falls on its claim that Benjamin is the beneficial owner of the Ranger Avenue property. Barbara Jean and Saunders are parties because they are the legal owners, as nominees, of the Ranger Avenue property who obtained it directly, not through Benjamin's intervention in the chain of title. The government seeks a judgment that divests them of ownership. Barbara Jean and Saunders are thereby not alleged to have been transferees of Benjamin. Therefore, the statute of limitations codified at 26 U.S.C. section 6901 does not apply.
 
 
 10
 Turning to the merits of the case, the government sought to foreclose on a property interest of its tax debtor Benjamin. The property interest is the equitable or beneficial ownership of the Ranger Avenue property. The action is timely because it was begun within six years following the government's assessment to Benjamin of tax liability.[4] The property interest is defined by state law. Aquilino v. United States, 363 U.S. 509, 513 (1960). In order to have a property right upon which to foreclose the government has to prove that Benjamin had such a property right under Maryland law.
 
 
 11
 The district court found that the government proved that Benjamin had an equitable interest in the Ranger Avenue property. However, the law invoked by the district court is completely inapposite to the case. The district court in defining the real property right of Benjamin to which the government succeeded relied on a statute that grants the State of Maryland, in addition to its right to collect real property taxes from the record owner, the right to collect real property taxes from those in possession or control of the real property as if they were the record owner. That statute, Md.Tax.Prop. Code Ann. Sec. 5-101(b)(2), does not purport to define ownership interests for purposes other than collection of Maryland real estate taxes.
 
 
 12
 The district court, the appellants, and the government failed to appreciate or allude to the body of law in Maryland controlling the division of legal and equitable ownership in land under circumstances in which one person provides the consideration to purchase property that is placed in the legal ownership of another. That body of law concerns the resulting trust and would have been more pertinent, if invoked. We believe that it rises to the level of plain error for the district judge, not alerted by the parties, to have failed to invoke it.
 
 
 13
 A resulting trust arises when the consideration given for a property is furnished by one party while the legal title is taken by the other provided the circumstances surrounding the transaction do not demonstrate a contrary intention by the parties. Levin v. Levin, 43 Md.App. 380, 405 A.2d 770 (1979). Whether or not a transaction gives rise to a resulting trust is to be judged as of its date and not upon facts occurring subsequently. Lacey v. Van Royen, 259 Md. 80, 89, 267 A.2d 91, 96 (1970). One of the circumstances surrounding the transaction that can demonstrate an intent contrary to the creation of a resulting trust is where the person supplying the purchase money is under a natural, moral or legal obligation to provide for a person taking title, then the purchase is to be considered a settlement or advancement. Taylor v. Mercantile-Safe Deposit & Trust Co., 269 Md. 531, 307 A.2d 670 (1973). A resulting trust may be rebutted in part; it may be shown that the payor intended the person in whose name record ownership was placed to have a partial beneficial ownership interest with a resulting trust arising in the payor only as to the balance of the beneficial ownership. Id. The party seeking to establish a resulting trust has the burden of doing so by clear and convincing evidence. United States v. District of Columbia, 596 F.Supp. 725 (D.Md.1984), aff'd on other grounds, 788 F.2d 239 (4th Cir.1986); Siemiesz v. Amend, 237 Md. 438, 206 A.2d 723 (1965).
 
 
 14
 Because the wrong body of law was applied, and especially because the wrong standard of proof was applied by the district court in determining whether Benjamin had a beneficial ownership interest in the Ranger Avenue property, we reverse that part of its judgment. Since we are reversing and remanding for trial, we note two other errors in the case. First, even assuming the correctness of the trial court's decision that Benjamin is the beneficial owner of some part, even most, of Ranger Avenue property, the trial court's order as it related to distribution of proceeds was in error.
 
 
 15
 For such a case, United States v. Rodgers, 461 U.S. 677 (1983), provides the framework for an action to enforce a lien under 26 U.S.C. section 7403 and it was not followed. The trial court evidently concluded that Benjamin owned the entire property subject to a lien of Saunders for $7,500. However, that was an erroneous conclusion given the trial court's finding that Saunders supplied $7,500 of the $48,000 down payment. That interest was hers both legally and beneficially. She supplied that portion of the purchase price and a resulting trust could not arise as to it.
 
 
 16
 In Rodgers, the Supreme Court considered issues arising when, as here, the government in succeeding to the delinquent taxpayer's interest shares it with an unindebted third party. The Court held that while the government could force the sale of the entire property so as to maximize the value received for its interest the government may retain the proceeds only as to the value of the interest that it succeeded to. The Court found that section 7403 makes a permissible use of the third party interest to facilitate the extraction of value from those concurrent property interests that are properly liable for the taxpayer's debt. Thus, there is no need for a severance action prior to the sale to satisfy the federal tax lien. However, following the sale, the proceeds of the sale must be distributed according to the interests of the parties. While the mechanics of the calculation of the value of the interests was not before the Court, id. at 698, the Court did go to some length, "only for the sake of illustration," id. (emphasis in original), in indicating how the proceeds should be distributed. That case involved the forced sale of real property in which the government's tax debtor had an interest and in which the debtor's wife had a homestead estate. The Court assumed that the homestead estate was the exact economic equivalent of a life estate and used mortality tables to value that interest. The effect of the Court's language and illustration is that the distribution from the sale should occur in relation to the fair market values of the constituent interests. The Court described its holding as follows: "[W]e have held that the Supremacy Clause allows the federal tax collector to convert a nondelinquent spouse's homestead estate into its fair cash value...." Id. at 703-04 (emphasis supplied). Thus, in the present case Saunders is entitled to the fair cash value of her interest.
 
 
 17
 The district court did not indicate either what Saunders' interest was or how it valued it. It ordered that she receive $7500 of the sales proceeds, which is the exact amount of her down payment made in 1971. Given its factual findings, the district court improperly defined and improperly valued Saunders' interest. Her interest was not a $7500 lien against the property as the district court seemed to find. Under Maryland resulting trust law, a party furnishing a portion of the purchase price will have a beneficial interest in the whole in proportion to his or her contribution. Levin, 43 Md.App. at 387, 405 A.2d at 776 (citing Fasman v. Pottashnick, 188 Md. 105, 109, 51 A.2d 664, 666 (1947)). Thus, the proper valuation would have been to award the government, who succeeded to Benjamin's interest, the same portion of the sales proceeds as his contribution to the purchase price, $40500, bore to the purchase price of $48000 and award Saunders the same portion of the sales proceeds as her contribution to the purchase price, $7500, bore to the purchase price of $48,000. That is, the government should have received 40500/48000 or 84.375% of the sales proceeds and Saunders should have received 7500/48,000 or 15.625% of the sales proceeds. It is extremely unlikely that the value of 4321 Ranger Avenue was exactly $48,000 (the original purchase price) at the time as of which the government realized on Benjamin's interest.
 
 
 18
 A second part of the Rodgers holding has also been ignored by the district court and the parties. The Supreme Court noted "that the court in a Sec. 7403 proceeding 'shall ... proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property....' " Id. at 705 (emphasis in original) (quoting 26 U.S.C. Sec. 7403 (1967)). The Court noted the use of the permissive "may" and construed the statute to vest some discretion in the trial court in determining whether to order a sale. The Court stated that the discretion was limited and should be exercised rigorously and sparingly, keeping in mind the government's paramount interest in prompt and certain collection of delinquent taxes. Id. at 711. The Court listed some considerations relevant to the exercise of that discretion. First, a court should consider the extent to which the government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes. Second, a court should consider whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside section 7403 and eminent domain proceedings), have a legally recognized expectation that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors. Third, a court should consider the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation that can result when partial interests are alienated. Fourth, a court should consider the relative character and value of the nonliable and liable interests, like possessory interests, held in the property.
 
 
 19
 There is no indication that the district court conducted the kind of the contemplated inquiry in deciding to exercise its discretion to order the sale. However, at a retrial, such an inquiry should be made.
 
 
 20
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 As to the matter of assessments preceding the filing of the notice of federal tax lien, the case was tried on an erroneous stipulation. The parties stipulated that assessments were made on two occasions (one for excise taxes, one for income taxes) against Barbara and Marie, as nominees of Benjamin, prior to the filing of the lien notice. One day prior to oral argument before this Court, the government submitted a letter indicating that the assessments were made directly against Benjamin and not against Barbara and Marie. The nominee lien was therefore filed against the property without Barbara and Marie ever having received an assessment. At oral argument, appellant's counsel indicated that the government's disclosure, in his view, had no significance
 
 
 [2]
 As will later be discussed, the finding of the district court, by its acceptance of the parties' stipulation that Saunders contributed $7,500 of the down payment, and its conclusion that Saunders was a nominee do not reconcile
 
 
 [3]
 That is why the government's disclosure, made one day prior to oral argument, is of no consequence to the case. See supra n. 1. Appellants argue that the government must have acted against Barbara Jean and Saunders by 1974; whether it first acted against them by making an assessment in 1980, as stipulated at trial, or first acted against them when it filed a notice of federal tax lien in 1983, as the recent disclosure indicates, is, in appellants' view, of no consequence to the limitations argument
 
 
 [4]
 Excise taxes were assessed against Benjamin on February 13, 1973, were abated in July or October of 1976 and were then reassessed against Benjamin on December 22, 1980. Additional restricted interest was assessed on November 30, 1981 and February 1, 1982. Income taxes were assessed against Benjamin on May 24, 1982